#20092505
$350

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MARYLAND
## (GREENBELT DIVISION)

| | | |
|---|---|---|
| In re: | * | |
| | | |
| CLAUD ANDERSON | * | Case No. 15-18781-WL |
| | | (Chapter 7) |
| Debtor | * | |
| | | |
| *    *    *    *    *    * | * | *    *    *    *    *    * |
| | | |
| | * | |
| STATE OF MARYLAND, | | |
| DEPARTMENT OF COMMERCE | * | |
| | | |
| and | * | |
| | | |
| MARYLAND AGRICULTURE & | * | |
| RESOURCE-BASED INDUSTRY | | |
| DEVELOPMENT CORPORATION | * | |
| | | |
| Plaintiffs | * | Adversary Proceeding |
| | | (Complaint Objecting to Discharge) |
| v. | * | No. _____ |
| | | |
| CLAUD ANDERSON | * | |
| | | |
| Defendant | * | |
| | | |
| *    *    *    *    *    * | * | *    *    *    *    *    * |

2015 DEC 31 PM 12:32
U.S. BANKRUPTCY
DISTRICT OF MD
GREENBELT

### COMPLAINT OBJECTING TO DISCHARGE OF DEBTS

**COME NOW** creditors State of Maryland, Department of Commerce (hereinafter "Commerce") and Maryland Agriculture & Resource-Based Industry Development Corporation (hereinafter "MARBIDCO")(hereinafter collectively "Creditors"), by its attorneys, and hereby files this Complaint Objecting to Discharge of Debts pursuant to 11 U.S.C. § 523(a)(2)(A) and pursuant to 11 U.S.C. § 523(a)(6) . As grounds therefor, Creditors state as follows:

1

1.      On June 22, 2015, debtor Claud Anderson (hereinafter "Debtor") filed a petition seeking relief under Chapter 7 of the U.S. Bankruptcy Code.

2.      Creditors file this adversary complaint objecting to the discharge of debts owed by Debtor to them pursuant to 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. § 523(a)(6).

3.      This is a core proceeding pursuant to 28 USC § 157(b)(2)(j) and jurisdiction lies with this court under U.S.C. Sections 151 and 157.

**I.      General Factual Allegations**

4.      Waterland Fisheries, Inc. (hereinafter "Waterland") is an aquaculture company certified to raise live tilapia, hybrid striped bass, and yellow perch fin fish.

5.      During all relevant time periods, Debtor was the majority owner (60%) and Chief Executive Officer of Waterland.  Upon information and belief, Debtor is still the majority owner (60%) and Chief Executive Officer of Waterland.

6.      During all relevant time periods, to protect itself from potential damage and injury to its property and inventory, Waterland maintained an insurance policy with Selective Insurance Company, policy number S1586046 (hereinafter "Insurance Policy").

7.      On June 27, 2008, MARBIDCO loaned Waterland $300,000.00 (hereinafter "MARBIDCO Loan").

8.      Also on June 27, 2008, Debtor personally guaranteed the MARBIDCO Loan (hereinafter "MARBIDCO Guaranty").  A true and correct copy of the MARBIDCO Guaranty is attached hereto and incorporated herein as Exhibit A.

9.      In or around December 2012, Waterland suffered damage to its buildings and inventory.  Due to the damage, Waterland experienced significant disruption to its operation and was in danger of defaulting on its various loan obligations.

10.     At the time it suffered the damage, Waterland's primary creditor was Harbor Bank of Maryland (hereinafter "Harbor Bank"), to which Waterland was indebted approximately $1,049,365.45.

11.     Waterland made a claim under the Insurance Policy for the damages suffered in or around December 2012. It was anticipated that Waterland would receive a significant amount in insurance proceeds to cover the damage to its property (hereinafter "Insurance Proceeds").

12.     In 2013, Debtor approached Harbor Bank and asked for additional financing so that it could convert Waterland's operation from the raising of tilapia to the raising of sea bass. Harbor Bank refused.

13.     Debtor then approached Commerce through its Maryland Small Business Development Financing Authority program (hereinafter "MSBDFA") for the additional financing.

14.     In order to help finance Waterland, it was determined that Commerce would need to enter into an agreement with Waterland's other primary creditors, namely Harbor Bank and MARBIDCO, detailing the creditors' rights to Waterland's assets, including the creditors' rights to the Insurance Proceeds.

15.     On July 26, 2013, Commerce, by and through MSBDFA, loaned Waterland $350,000.00 (hereinafter "Commerce Loan").

16.     As a condition of the Commerce Loan, Waterland assigned all rights it had to any proceeds payable under the Insurance Policy to Commerce (hereinafter "Insurance Assignment"). A true and correct copy of the Insurance Assignment is attached hereto and incorporated herein as Exhibit B.

3

17.     Also on July 26, 2013, Debtor personally guaranteed the Commerce Loan (hereinafter "Commerce Guaranty").  A true and correct copy of the Commerce Guaranty is attached hereto and incorporated herein as Exhibit C.

18.     Contemporaneously with the execution of the Commerce Loan, Commerce and MARBIDCO, along with Harbor Bank and Delmarva Premium Seafood Company, entered into an Amended and Restated Subordination and Intercreditor Agreement (hereinafter "Intercreditor Agreement") wherein the creditors set priority of claims on various assets of Waterland.  A true and correct copy of the Intercreditor Agreement is attached hereto and incorporated herein as Exhibit D.

19.     Waterland, by and through Debtor, also signed the Intercreditor Agreement.  See Exhibit D.

20.     Among the provisions of the Intercreditor Agreement, Waterland's creditors set priority of claims over the Insurance Proceeds.  See Exhibit D.

21.     At the same time it entered into the Intercreditor Agreement, Commerce also entered into a Subordination and Intercreditor Agreement (hereinafter "Anderson Agreement") with Joann Anderson (hereinafter "Ms. Anderson"), Debtor's wife, wherein Ms. Anderson subordinated her claims to any and all of Waterland's assets, including any claims to the Insurance Proceeds, to Commerce.  A true and correct copy of the Anderson Agreement is attached hereto and incorporated herein as Exhibit E.

22.     Debtor acknowledged and agreed to be bound by the terms of the Anderson Agreement in his personal capacity.  See Exhibit E, p. 7.

23.     On October 24, 2014, after Waterland defaulted on the MARBIDCO Loan and pursuant to the MARBIDCO Guaranty, MARBIDCO demanded that Debtor pay all outstanding

4

obligations of Waterland under the MARBIDCO Loan.  A true and correct copy of the October 24, 2014 Demand Letter is attached hereto and incorporated herein as Exhibit F.

24.     On December 29, 2014, after Waterland defaulted on the Commerce Loan and pursuant to the Commerce Guaranty, Commerce demanded that Debtor pay all outstanding obligations of Waterland under the Commerce Loan.  A true and correct copy of the December 29, 2014 Demand Letter is attached hereto and incorporated herein as Exhibit G.

25.     Debtor currently owes MARBIDCO $250,227.45 under the terms of the MARBIDCO Loan and Guaranty.

26.     Debtor currently owes Commerce $420,581.57 under the terms of the Commerce Loan and Guaranty.

## II.     Factual Allegations in Support of Objection to Discharge

27.     Sometime after the executions of the Commerce Loan, Commerce Guaranty, Insurance Assignment, Intercreditor Agreement, and Anderson Agreement, Waterland received the Insurance Proceeds, in the amount of $800,000.00, from Selective Insurance Company in full payment for the claims made under the Insurance Policy.

28.     Debtor, instead of investing the Insurance Proceeds back into Waterland and in clear violation of the Intercreditor Agreement, the Insurance Assignment, and the Anderson Agreement, removed the Insurance Proceeds from Waterland's accounts and gave the Insurance Proceeds to Ms. Anderson.  It is unknown at this time what Ms. Anderson has done with the Insurance Proceeds.

29.     Upon information and belief, without the Insurance Proceeds to repair the December 2012 damage, Waterland has ceased operations.

5

30.     In order to induce Commerce into executing the Commerce Loan, Debtor, both as an agent of Waterland and in his individual capacity, represented to Commerce during negotiations that the Insurance Proceeds would be used to either invest in Waterland, thereby increasing the value of the business and its assets and enabling Waterland to continue operation, or be turned over to Waterland's creditors thereby reducing the amount owed to Harbor Bank and increasing the value of Commerce's secured interest in Waterland's assets.

31.     In order to induce Waterland's creditors to enter into the Intercreditor Agreement, Debtor represented to the creditors, including MARBIDCO and Commerce, that the creditors would receive the Insurance Proceeds.

32.     In entering the Intercreditor Agreement, MARBIDCO weakened its position as creditor and devalued its claim on Waterland's assets but did so under the belief that Waterland's long term health and operation would be assisted by the influx of funds from Commerce and the Insurance Proceeds thereby increasing the likelihood that Waterland would be able to pay all creditors, including MARBIDCO, the amounts owed.

33.     Debtor memorialized the representations concerning the Insurance Proceeds when he signed the Intercreditor Agreement and the Insurance Assignment on behalf of Waterland and when he signed and agreed to be personally bound by the Anderson Agreement.

34.     Furthermore, Debtor represented that, upon receipt of the Insurance Proceeds, he would turn over the Insurance Proceeds to Commerce. See Exhibit B, pp. 1-2, ¶¶ 1 & 3.

35.     Additionally, Debtor represented that he would neither dispose of nor liquidate the Insurance Proceeds, including giving the Insurance Proceeds to Ms. Anderson, without first obtaining approval of Commerce. See Exhibit E, p. 2, ¶ 4.

6

36.     Debtor's representations with regard to the Insurance Proceeds were fraudulent as Debtor never intended to turn over the Insurance Proceeds to Commerce as he represented during negotiations and as he agreed to in the Intercreditor Agreement, Insurance Assignment and Anderson Agreement.

37.     Debtor knowingly and intentionally misrepresented the use of the Insurance Proceeds as Debtor fully intended to always give the Insurance Proceeds to his wife rather than to his other creditors, including Commerce and MARBIDCO.

38.     Debtor knowingly and intentionally misrepresented his intended use of the Insurance Proceeds to defraud Commerce of the $350,000.00 Commerce Loan and to forestall his creditors, including MARBIDCO, from taking action against either Waterland or him personally.

39.     Debtor needed time to receive the Insurance Proceeds and to transfer the Insurance Proceeds to Ms. Anderson, and, therefore, Debtor needed the additional financing from Commerce and the execution of the Intercreditor Agreement in order to assuage the fears of Waterland's creditors thereby delaying any action they may take to foreclose on Waterland's assets, including the Insurance Proceeds.

40.     Debtor willfully and maliciously injured Commerce and MARBIDCO as Debtor knew or should have known that the actions taken by Commerce and MARBIDCO in reliance upon Debtor's fraudulent representation would cause Commerce and MARBIDCO substantial loss of money.

41.     At the time the Intercreditor Agreement and the Commerce Loan were executed, there was sufficient value in Waterland's assets coupled with the Insurance Proceeds to pay not only the amount owed by Harbor Bank, but also what was owed to Commerce and MARBIDCO.

42.    Commerce justifiably relied upon Debtor's representations as to the use of the Insurance Proceeds when it agreed to the Commerce Loan and Commerce would never have executed the Commerce Loan or entered into the Intercreditor Agreement without these representations.

43.    MARBIDCO justifiably relied upon Debtor's representations as to the use of the Insurance Proceeds when it agreed to the Intercreditor Agreement and MARBIDCO would never have executed the Intercreditor Agreement without these representations.

44.    Commerce and MARBIDCO have been damaged by Debtor's intentional misrepresentations as the value of Waterland's assets securing the Commerce Loan and MARBIDCO Loan have been decreased substantially without the Insurance Proceeds and are now insufficient to cover the primary amount owed to Harbor Bank. Harbor Bank has foreclosed upon Waterland's assets and without the additional funds provided by the Insurance Proceeds, neither Commerce nor MARBIDCO are likely to receive any distribution from Harbor Bank's sale of Waterland's assets to recoup the money loaned to Waterland.

45.    Debtor is personally responsible for the debt owed by Waterland because his own fraudulent conduct committed on behalf of Waterland caused injury to Commerce and MARBIDCO. In re Pontier, 165 B.R. 797, 799 (Bankr. D. Md. 1994). Essentially, Debtor's bad faith actions caused tortious injury to Commerce and MARBIDCO and therefore Debtor is not insulated from personal liability merely because he was acting within his scope of employment as Waterland's Chief Executive Officer at the time Debtor commissioned the fraud. Id.

**III.    Basis for Discharge Under 11 U.S.C. § 523(a)(2)(A) & 523(a)(6)**

46.    Discharge is proper under 11. U.S.C. § 523(a)(2)(A) because the debt owed to Commerce and MARBIDCO was obtained by false pretenses, false representations, or actual fraud, other than a statement regarding Debtor's financial condition.

47.    Discharge is proper under 11 U.S.C. § 523(a)(6) because the debt is a result of willful and malicious injury by Debtor to Commerce and MARBIDCO.

**WHEREFORE**, Plaintiffs State of Maryland, Department of Commerce and Maryland Agriculture & Resource-Based Industry Development Corporation, respectfully requests that this Court (1) deny the discharge of Debtor Claud Anderson as to all debts arising from the Commerce Loan and MARBIDCO Loan, (2) order the costs of the clerk of court to be taxed to Debtor, and (3) award such other, further, and general relief to which Creditors are entitled and which the Court deem to be just and proper.

/s/ William J. Chen, III
William J. Chen, III
Assistant Attorney General
Bar No. 17064
World Trade Center Baltimore, 5th Floor
401 East Pratt Street
Baltimore, Maryland  21202
(410) 767-6463
william.chen@maryland.gov
Attorney for Plaintiffs

 

MARBIDCO — Waterland Fisheries, Inc. — Guaranty
June 27, 2008

## PERSONAL GUARANTY AGREEMENT

**THIS PERSONAL GUARANTY AGREEMENT** (this "Agreement") is made this 27 day of June, 2008, to the **MARYLAND AGRICULTURAL AND RESOURCE-BASED INDUSTRY DEVELOPMENT CORPORATION**, a body politic and corporate and an instrumentality of the State of Maryland (the "Lender"), by **CLAUD ANDERSON** (the "Guarantor).

### RECITALS

1.      The Lender has made a loan to Waterland Fisheries, Inc., a Michigan corporation (the "Borrower"), in the original principal amount of $300,000.00 (the "Loan").

2.      The Loan is evidenced by a promissory note in the principal amount of the Loan dated the same date as this Agreement, made by Borrower and payable to the Lender (as it may be amended, the "Note"), and is subject to the terms of a Loan Agreement between the Borrower and the Lender dated the same date as this Agreement (as it may be amended, the "Loan Agreement").

3.      The Guarantor controls the Borrower and will financially benefit from the Loan.

4.      As a material condition for the Lender to make the Loan, the Lender has required that the Guarantor guaranty payment of the Loan as provided in this Agreement.

**NOW, THEREFORE,** in order to induce the Lender to make the Loan to the Borrower, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Guarantor hereby agrees as follows:

1.      <u>Guaranty.</u>

(a)      The Guarantor hereby absolutely, irrevocably and unconditionally guarantees to the Lender the following obligations (collectively. the "Guarantor's Obligations"):

(i)      The full and punctual payment when due (whether at stated maturity, upon acceleration, or otherwise) of all present and future indebtedness and obligations of the Borrower to the Lender, whether direct or indirect, absolute or contingent, joint or several, including all obligations arising out of the Loan Agreement and the other Loan Documents (as defined below) and the "Obligations" as defined in the Loan Agreement; and

(ii)      The due and punctual performance of all of the other terms of the Loan Agreement and the other Loan Documents.

(b)      The term "Loan Documents" means this Agreement, the Loan Agreement, the Note, and any other document or agreement executed or delivered by the Borrower, the Guarantor, or any other person in connection with the Guarantor's Obligations, as any of them may be amended.

2.      <u>Absolute Guaranty.</u>  The guaranty of the Guarantor under this Agreement is a guaranty of payment and not of collection and shall remain in effect until all of the Guarantor's Obligations are indefeasibly paid in full. The Guarantor's Obligations are the primary, direct, and immediate obligations of the Guarantor and shall not be affected by, subject to, or conditioned upon, and may be enforced against the Guarantor irrespective of the occurrence of, any of the following:

Exhibit A

 

MARBIDCO — Waterland Fisheries, Inc. — Guaranty
June 27, 2008

        (a)    Any pursuit, enforcement, or exhaustion of any rights or remedies the Lender may have to collect any of the Guarantor's Obligations from the Borrower or from any other maker, endorser, surety or guarantor of, or pledgor of collateral for, any part of the Guarantor's Obligations (each other maker, endorser, surety, guarantor or pledgor being an "Obligor" and collectively "Obligors"), or any recourse to or against any collateral or security for any part of the Guarantor's Obligations;

        (b)    The invalidity, lack of priority, or unenforceability in whole or in part of any the Loan Documents;

        (c)    Any counter-claim, recoupment, setoff, reduction, or defense based on any claim that the Guarantor may have against the Lender, the Borrower, or any Obligor;

        (d)    The voluntary or involuntary liquidation, dissolution, termination, merger, sale, or other disposition of the Borrower or any of the Borrower's assets;

        (e)    Any bankruptcy, reorganization, insolvency, or similar proceedings for the relief of debtors under any federal or state law by or against the Borrower or any Obligor, or any discharge, limitation, modification, or release of liability of the Borrower or any Obligor arising out of any such proceedings;

        (f)    Any event or matter to which the Guarantor has consented under the terms of this Agreement; and

        (g)    Any other circumstance that might otherwise constitute a legal or equitable discharge, release, or defense of any Obligor (other than the Guarantor).

        3.    <u>Consents</u>.  Without notice to, or further consent of, the Guarantor, the Guarantor hereby consents that the Lender may at any time:

        (a)    Renew, extend, accelerate, subordinate, or change any of the terms of the Guarantor's Obligations;

        (b)    Waive, release, amend, or otherwise deal with any of the provisions of the Loan Documents in any manner satisfactory to the Lender;

        (c)    Release the Borrower or any of the Obligors;

        (d)    Waive or delay the exercise of any of its rights and remedies against the Borrower or any of the Obligors or any collateral or security for any part of the Guarantor's Obligations;

        (e)    Release, substitute, subordinate, add, or fail to maintain, preserve, or perfect any of its liens on, security interests in, or rights to, or otherwise deal in any manner satisfactory to the Lender with any collateral or security for any part of the Guarantor's Obligations;

        (f)    Apply any payments of any of the Guarantor's Obligations received from the Borrower, the Guarantor, any Obligor, or any other source to the Guarantor's Obligations in any order and manner determined by the Lender, in its sole and absolute discretion; or

        (g)    Take or fail to take any other action that may to any extent vary the risk of the Guarantor or otherwise operate as a legal or equitable discharge, release, or defense of the Guarantor under applicable laws.



MARBIDCO — Waterland Fisheries, Inc. — Guaranty
June 27, 2008

    4.    <u>Waivers</u>.  The Guarantor hereby waives:

    (a)    Notice of the execution and delivery of any of the Loan Documents;

    (b)    Notice of the creation of any of the Guarantor's Obligations;

    (c)    Notice of the Lender's acceptance of and reliance on this Agreement;

    (d)    Presentment and demand for payment of, and notice of non-payment and protest of non-payment of, the Guarantor's Obligations;

    (e)    Any notice from the Lender of the financial condition of the Borrower, regardless of the Lender's knowledge thereof;

    (f)    Demand for observance, performance, or enforcement of, or notice of default under, any of the provisions of the Loan Documents, and all other demands and notices otherwise required by law that the Guarantor may lawfully waive, except for any notice expressly provided for in this Agreement;

    (g)    Any right or claim to cause a marshaling of the assets of the Borrower or any Obligor;

    (h)    Any rights of the Guarantor to subrogation, recourse, reimbursement, or indemnity against the Borrower, any Obligor, or any collateral for any of the Guarantor's Obligations and any other rights that may accrue on account of any payments made by the Guarantor to the Lender under this Agreement;

    (i)    Any defense to the Guarantor's Obligations based on any failure by the Lender to preserve, adequately maintain, or perfect its interest in any collateral for any of the Guarantor's Obligations provided by the Borrower, or on any act or failure to act by the Lender that constitutes a release of or impairs or affects the value of any collateral; and

    (j)    Any defense based on the adequacy of the consideration for this Agreement.

    5.    <u>Representations and Warranties</u>.  The Guarantor hereby represents and warrants to the Lender that:

    (a)    The Guarantor has had an opportunity to examine the Loan Documents existing on the date hereof.

    (b)    The Guarantor own all of the corporate stock of the Borrower, and the Loan to the Borrower by the Lender will financially benefit the Guarantor.

    (c)    The financial statements of the Guarantor previously furnished to the Lender in connection with the application for the Loan fairly present the financial position of the Guarantor as of their date, and no materially adverse change has occurred in the financial position of the Guarantor since that date.

    (d)    The Guarantor has paid all taxes and assessments required to be paid by the Guarantor, and has filed all tax returns required to be filed by the Guarantor.

 

MARBIDCO — Waterland Fisheries, Inc. — Guaranty
June 27, 2008

(e)     There is no statute, agreement, judgment, or court order applicable or binding on the Guarantor that would prohibit, conflict with, or prevent the execution, delivery, and performance of this Agreement by the Guarantor.

(f)     This Agreement constitutes the valid and binding obligations of the Guarantor, enforceable in accordance with its terms.

(g)     All information contained in any financial statement, report, or other document given by the Guarantor or the Borrower in connection with the Loan is true and accurate in all respects, and the Guarantor and the Borrower have not omitted to state any material fact or any fact necessary to make the information not misleading.

(h)     There is no Default on the part of the Guarantor under this Agreement, and no event has occurred or is continuing that, with notice, or the passage of time, or both, would constitute a Default under this Agreement.

(i)     The Guarantor has complied with all laws and orders of any courts or agencies of government.

(j)     There is no indebtedness of the Borrower owing to the Guarantor other than accrued salaries, commissions and the like.

6.     <u>Covenants</u>.

(a)     The Guarantor covenants with the Lender to provide as soon as available, but no later than May 15 of each year:

(i)     A copy of the Guarantor's personal financial statements in reasonable detail satisfactory to the Lender;

(ii)     A copy of the Guarantor's federal income tax returns filed for the year, with all supporting schedules; and

(iii)     Any additional information that the Lender reasonably requests.

(b)     Without the prior written consent of the Lender, the Guarantor shall not enter into any arrangement to sell, transfer, assign, or otherwise dispose of all or any substantial part of the Guarantor's assets.

(c)     The Guarantor shall not dispose of any of his or her interest in the Borrower.

(d)     The Guarantor shall comply with all laws, rules, and regulations.

(e)     The Guarantor shall subordinate to the repayment of the Loan any right to payments due on advances or loans made to the Borrower.

(f)     The Guarantor shall promptly pay all taxes imposed on the Guarantor and his or her properties prior to the date when any interest or penalty would accrue for non-payment, except for those taxes being contested in good faith by appropriate proceedings by the Guarantor.

 

MARBIDCO — Waterland Fisheries, Inc. — Guaranty
June 27, 2008

7.     Default.  The occurrence of any of the following events shall constitute a default under the terms of this Agreement (collectively or individually, a "Default"):

(a)     The failure of the Guarantor promptly to pay and perform any part of the Guarantor's Obligations;

(b)     Any representation or warranty made in this Agreement or any financial statement or other information furnished by the Guarantor in connection with the Loan proves to have been false or misleading in any material respect on the date made or furnished;

(c)     The failure of the Guarantor to comply with any covenant set forth in this Agreement;

(d)     The occurrence of a default under the terms of any of the Loan Documents which is not cured within any applicable grace or cure period;

(e)     Any court of competent jurisdiction makes a final order (i) adjudicating the Guarantor a bankrupt, (ii) appointing a trustee or receiver over a substantial part of the property of the Guarantor, (iii) approving a petition for, or affecting an arrangement in, bankruptcy, a reorganization pursuant to federal bankruptcy law, or any other judicial modification or alterations of the rights of the Lender or of other creditors of the Guarantor, (iv) assuming custody or sequestering any substantial part of the property of the Guarantor, or (v) attaching or garnishing any substantial part of the property of the Guarantor; or if the Guarantor (A) files such petition, or (B) takes or consents to any other actions seeking any such judicial order, or (C) makes an assignment for the benefit of creditors, or (D) fails to pay debts generally as they become due, or (E) makes an admission in writing of inability to pay debts generally as they become due;

(f)     If the Guarantor becomes a "Disabled Person" as defined the Estates and Trusts Article of the Annotated Code of Maryland; or

(g)     The death of the Guarantor.

8.    Rights and Remedies.

(a)     Upon the occurrence of any Default:

(i)     An amount equal to the total of the Guarantor's Obligations (whether matured or unmatured and regardless of whether any portion of the Guarantor's Obligations are then due and payable by the Borrower or any Obligor) shall immediately be due and payable by the Guarantor to the Lender without further action by, or notice from, the Lender unless expressly provided for in this Agreement;

(ii)     The Lender may exercise any of its rights and remedies under this Agreement or law to enforce and collect the Guarantor's Obligations.  All rights and remedies shall be cumulative and enforceable alternatively, successively, or concurrently;

(iii)     The Guarantors shall pay to the Lender on demand the amount of any costs and expenses, including court costs and attorneys' fees and expenses paid or incurred by or on behalf of the Lender in exercising any of its rights and remedies, together with interest thereon from the date due until paid in full at the rate of **10%** per annum.

 

MARBIDCO — Waterland Fisheries, Inc. —– Guaranty
June 27, 2008

(b)    Each Default shall give rise to a separate cause of action, and separate actions may be brought under this Agreement as each cause of action arises.  No failure or delay by the Lender to require strict performance by the Guarantor of any of the Guarantor's Obligations or to exercise any of its powers, rights, or remedies under this Agreement or applicable laws shall operate as a waiver thereof or preclude the Lender at any later time from demanding strict performance thereof or exercising any such powers, rights or remedies.  No conduct, custom, or course of dealing shall be effective to waive, amend, or release this Agreement.  No modification or waiver of any of the provisions of this Agreement shall be effective unless in writing and signed by the Lender, and any waiver shall be effective only in the specific instance and for the specific purpose for which it is given.

9.    **CONFESSED JUDGMENT.  UPON THE OCCURRENCE OF A DEFAULT, THE GUARANTOR HEREBY AUTHORIZES ANY ATTORNEY DESIGNATED BY THE LENDER, OR ANY CLERK OF ANY COURT OF RECORD, TO APPEAR FOR THE GUARANTOR IN ANY COURT OF RECORD AND CONFESS JUDGMENT AGAINST THE GUARANTOR WITHOUT PRIOR HEARING, IN FAVOR OF THE LENDER IN AN AMOUNT EQUAL TO THE TOTAL OF THE GUARANTOR'S OBLIGATIONS THEN DUE AND PAYABLE BY THE GUARANTOR HEREUNDER, ALL OTHER AMOUNTS THEN DUE AND PAYABLE BY THE GUARANTOR TO THE LENDER UNDER THE PROVISIONS OF THIS AGREEMENT, COSTS OF SUIT, AND ATTORNEYS' FEES OF 15% OF THE AMOUNT OF THE GUARANTOR'S OBLIGATIONS.  THE GUARANTOR HEREBY RELEASES, TO THE EXTENT PERMITTED BY APPLICABLE LAWS, ALL ERRORS AND ALL RIGHTS OF EXEMPTION, APPEAL, STAY OF EXECUTION, INQUISITION, AND OTHER RIGHTS TO WHICH THE GUARANTOR MAY OTHERWISE BE ENTITLED UNDER THE APPLICABLE STATE AND FEDERAL LAWS NOW OR HEREAFTER IN FORCE.  THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST THE GUARANTOR SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO.  THIS AUTHORITY MAY BE EXERCISED ON ONE OR MORE OCCASIONS, IN THE SAME OR DIFFERENT JURISDICTIONS, AS OFTEN AS THE LENDER DEEMS NECESSARY OR DESIRABLE.**

10.    Notices.

(a)    Any communication shall (i) when mailed, be effective three business days after it is deposited in the mails, or (ii) when mailed for next day delivery by a reputable overnight courier service, be effective one business day after mailing.  Communications shall be delivered to the office of the addressee, as follows:

If to the Lender:

Maryland Agricultural and Resource-Based Industry
  Development Corporation
Clock Tower Place
1410 Forest Drive, Suite 28
Annapolis, Maryland  21403
Attention:  Executive Director

If to the Guarantor:

5614 Oak Place
Bethesda, Maryland  20187
Attention: Claud Anderson

 

MARBIDCO — Waterland Fisheries, Inc. — Guaranty
June 27, 2008

    (b)  The Lender and the Guarantor may change the address specified in (a) above by sending written notice to the other parties.

   11.  <u>Consent to Jurisdiction</u>.  The Guarantor irrevocably:

    (a)  Consents to the jurisdiction and venue of any state or federal court sitting in the State of Maryland over any action related to this Agreement or any of the Loan Documents;

    (b)  Waives, to the fullest extent permitted by law, any objection that the Guarantor may have to the venue of any action, or that any action has been brought in an inconvenient forum; and

    (c)  Consents to the service of process in any action by the mailing of copies of the process to the Guarantor by certified or registered mail at the Guarantor's address set forth for the purpose of giving notice.

   12.  <u>Waiver of Jury Trial</u>.  The Guarantor waives any right he or she may have to a trial by jury in any action, proceeding, or litigation directly or indirectly arising out of, under and in connection with the Guarantor's Obligations, the Loan or this Agreement.

   13.  <u>Continuing Agreement</u>.

    (a)  This Agreement shall continue in effect and shall bind the Guarantor regardless of how long before or after the date of this Agreement any of the Guarantor's Obligations are incurred, and all representations, warranties, covenants, consents, waivers, and agreements of the Guarantor herein shall survive the date of this Agreement and shall continue in full force and effect until all Guarantor's Obligations have been indefeasibly paid in full.

    (b)  If no longer in effect, this Agreement shall be reinstated if at any time:  (i) any part of a payment of any of the Guarantor's Obligations is rescinded or must be returned by the Lender upon the insolvency, bankruptcy, receivership, dissolution, liquidation or reorganization of the Borrower, the Guarantor, or any Obligor, or as a result of the appointment of a receiver, trustee, or similar officer for the Borrower, the Guarantor, or any Obligor or any substantial part of their property, all as though the payment had not been made and regardless of whether the payment is returned to the party who originally made it or to some other party.

    (c)  Upon payment by the Guarantor to the Lender of any part of the Guarantor's Obligations, any present or future right of the Guarantor against the Borrower or any Obligor with respect to such payment arising by way of subrogation, reimbursement, indemnity, or otherwise shall be subordinate to the prior indefeasible payment in full of the Guarantor's Obligations.

   14.  <u>Subordination of Debt</u>.

    (a)  The Guarantor hereby subordinates the payment of principal, interest, and any other amounts due on any current or future indebtedness owed by the Borrower to the Guarantor, and, following a Default, all dividends, distributions, salaries owed by the Borrower to the Guarantor (all indebtedness, dividends, distributions, and salaries are referred to as the "Company Debt") to the prior payment in full of the Guarantor's Obligations and agree that all of the right and interest of the Guarantor in the Company Debt shall at all times be subordinate to the right and interest of the Lender in the Guarantor's Obligations.

 

MARBIDCO — Waterland Fisheries, Inc. — Guaranty
June 27, 2008

(b)    The Guarantor will not demand or accept, and the Borrower will not offer or make, directly or indirectly, by setoff, redemption, or otherwise, any payment on any part of the Company Debt until the full amount of the Guarantor's Obligations has been received by the Lender in cash.

(c)    Any payment of Company Debt received by the Guarantor that is prohibited under this Agreement shall be held by the Guarantor in trust for the Lender. If the Guarantor fails to endorse any such payment where necessary or appropriate, the Guarantor hereby irrevocably appoints the Lender as attorney-in-fact for the Guarantor, with full power to make any such endorsement and with full power of substitution.

(d)    Until the full amount of the Guarantor's Obligations has been received in cash by the Lender, the Guarantor, without the prior written consent of the Lender, will not (i) accelerate the maturity of any of the Company Debt, (ii) exercise any rights or remedies or take any action to collect or enforce any of the Company Debt, (iii) join with any other creditors of the Borrower in filing any petition commencing any action described in Section 7(e) against or in respect of the Borrower, (iv) sell, assign, transfer, or otherwise dispose of any part of the Company Debt, (v) accept any collateral or security for the Company Debt, (vi) amend or modify any instrument or agreement evidencing, creating, or executed in connection with any part of the Company Debt, or (vii) create additional Company Debt.

(e)    The Guarantor shall maintain proper books and records concerning the Company Debt and shall permit the Lender to inspect and photocopy those books and records or any instrument evidencing or creating any of the Company Debt.

(f)    Notwithstanding any terms in this Agreement to the contrary, any payment of Company Debt made within forty-five days prior to a Default shall be repaid to the Borrower.

15.    <u>Miscellaneous</u>.

(a)    All amounts payable by the Guarantor under this Agreement to the Lender shall be paid in immediately available funds in a manner acceptable to the Lender at the Lender's address set forth in Section 10 above, or to any other place that the Lender or other holder of this Agreement may designate.

(b)    The Lender may, without notice to, or consent of, the Guarantor, transfer any part of the Guarantor's Obligations, and this Agreement will inure to the benefit of the Lender's transferee; provided, that the Lender shall continue to have the unimpaired right to enforce this Agreement as to that part of the Guarantor's Obligations the Lender has not transferred. In connection with any transfer or the grant by the Lender of any participation in any part of the Guarantor's Obligations, the Lender may divulge to any potential or actual transferee or participant any information or documents furnished in connection with this Agreement.

(c)    The invalidity, illegality, or unenforceability of any provision of this Agreement shall not affect the validity, legality, or enforceability of any other provisions of this Agreement, all of which shall remain effective.

(d)    This Agreement and the rights and obligations of the parties under it shall be construed and interpreted in accordance with the laws of the State of Maryland.

(e)    Time is of the essence in connection with the Guarantor's Obligations.

-8-

 

MARBIDCO — Waterland Fisheries, Inc. — Guaranty
June 27, 2008

           (f)      Section headings in this Agreement are included for convenience of reference only, and do not affect the meaning of any of the provisions of this Agreement.

           (g)      This Agreement shall be binding upon the Guarantor and his or her successors and assigns, and shall inure to the benefit of the Lender and its successors and assigns.

    **IN WITNESS WHEREOF**, the Guarantor has executed and delivered this Guaranty Agreement under seal as of the date first written above.

**WITNESS:**                   **GUARANTOR:**

*Brent anderson*         By: _____ (SEAL)
                          Claud Anderson

**STATE OF MARYLAND, ~~CITY~~/COUNTY OF** *Marty* **, TO WIT:**

    **I HEREBY CERTIFY**, that on this 27 day of *June*, 2008, before me, the subscriber, a Notary Public of the State and City/County aforesaid, personally appeared **CLAUD ANDERSON**, known to me (or satisfactorily proven) to be the person whose name is subscribed to this document, and acknowledged that he executed this document for the purposes contained therein.

    **IN WITNESS WHEREOF**, I have hereunto set my hand and official seal as of the day and year set forth above.

                         _____
                         Notary Public

My Commission expires: _____

          LAWRENCE S. STERN
     NOTARY    Notary Public, State of Maryland
     PUBLIC    County of Montgomery
          My Commission Expires January 1, 2010

-9-





DOUGLAS F. GANSLER
*Attorney General*

JOHN B. HOWARD, JR.
*Chief Deputy Attorney General*

DANIEL L. BARNETT
*Deputy Attorney General*

LAILA ATALLAH
*Assistant Attorney General*
*Counsel to the Department*

BARBARA CURNIN KOUNTZ
*Assistant Attorney General*
*Deputy Counsel to the Department*

ILENE S. GARTEN
IRA SCHWARTZ
W. DAVID RAWLE
DAVID M. PORTER
COLLEEN A. LAMONT
LARA L. HJORTSBERG
WILLIAM J. CHEN III
*Assistant Attorneys General*

**STATE OF MARYLAND**
**OFFICE OF THE ATTORNEY GENERAL**
**DEPARTMENT OF BUSINESS AND ECONOMIC DEVELOPMENT**

December 29, 2014

410.767.6463
WRITER'S DIRECT DIAL NO.

Dr. Claud Anderson, President
Waterland Fisheries, Inc.
299 Nealson Street
Hurlock, Maryland 21643

Dr. Claud Anderson
5614 Oak Place
Bethesda, Maryland 20817

      RE:    **$350,000.00 Loan and Security Agreement from Maryland Small Business Development Financing Authority (MSBDFA) to Waterland Fisheries, Inc. (WFI) and the Guaranty of Payment by Claud Anderson**

              **$350,000.00 Promissory Note from Maryland Small Business Development Financing Authority (MSBDFA) to Waterland Fisheries, Inc. (WFI) and the Guaranty of Payment by Claud Anderson**

Dear Sir:

I represent the State of Maryland, Department of Business of Economic Development (the "Department" or "DBED") in connection with the following described obligations of Waterland Fisheries Inc., and Claud Anderson:

    1.    $350,000.00 Loan and Security Agreement from Maryland Small Business Development Financing Authority (MSBDFA) to Waterland Fisheries, Inc. (WFI) and the Guaranty of Payment by Claud Anderson (Guarantor) and

    2.    $350,000.00 Promissory Note ("Note") from MSBDFA to Waterland Fisheries, Inc. and the Guaranty of Payment by the Guarantor.

Exhibit G



Waterland Fisheries, Inc.
Dr. Claud Anderson
December 29, 2014
Page 2

Waterland Fisheries has ceased operations at the Nealson Street facility. Waterland Fisheries is in arrears in the payments due under the Note dated July 26, 2013. Waterland Fisheries is due for payments on and after September 25, 2014. The monthly payment is $4,599.00. The arrearage on the Waterland Fisheries, Inc. account through December 25, 2014 totals $18,396.00.

Through December 23, 2014, Waterland Fisheries, Inc. is indebted to MSBDFA for the sum of $389,163.78 with respect to the Loan and Security Agreement and Note, including unpaid principal of $379,056.18 and accrued and unpaid interest in the amount of $10,107.60. Additional daily interest of $84.23 accrues on and after December 23, 2014.

On behalf of MSBDFA, we hereby give notice to Waterland Fisheries, Inc. and the Guarantor pursuant to Section 10(a) of the Waterland Fisheries, Inc. Promissory Note that WFI has failed to pay the Obligations as defined in the Waterland Fisheries, Inc. Loan Documents, and in particular has failed to pay sums due to MSBDFA under the Promissory Note. We further demand on behalf of MSBDFA that Waterland Fisheries, Inc. and the WFI Guarantor pay all amounts due to MSBDFA under the Promissory Note in the amount of $18,396.00 within 5 business days after the date of this letter, failing which MSBDFA will exercise its option pursuant to Section 11 of the Promissory Note to treat the entire indebtedness as immediately due and payable without further notice to Waterland Fisheries, Inc. or the WFI Guarantor and will pursue its remedies under the Waterland Fisheries, Inc. Loan Documents and the Guaranty of Payment, including filing an a civil action for judgment by confession against Waterland Fisheries, Inc. and the WFI Guarantor.

Please be advised that unless MSBDFA receives a payment by certified or cashier's check, federal wire funds transfer, or other ready funds in the amount of $18,396.00 with respect to the Waterland Fisheries, Inc. Loan Documents, by the close of business at DBED's headquarters at World Trade Center Baltimore, 17th Floor, 401 East Pratt Street, Baltimore, Maryland 21202 on Monday, January 5, 2015, MSBDFA will treat the entire Waterland Fisheries, Inc. Loan indebtedness of WFI as immediately due and payable without further notice to Waterland Fisheries, Inc. or the SFI Guarantor, and the State will initiate legal proceedings in a Maryland court to recover judgments by confession against Waterland Fisheries, Inc. and the WFI Guarantor as to the full accelerated amount of their respective indebtedness plus attorneys' fees and costs of collection

Waterland Fisheries, Inc.
Dr. Claud Anderson
December 29, 2014
Page 3

Very truly yours,

William J. Chen, III
Assistant Attorney General

cc:     Greg Cole, Office of Finance Programs, DBED
        Les Hall, Small Business Financing, DBED
        Laila K. Atallah, AAG, Principal Counsel, DBED
        Anthony Williams, MMG



# GUARANTY OF PAYMENT

**THIS GUARANTY OF PAYMENT** (this "Guaranty") is made this 26th day of July, 2013 by **CLAUD ANDERSON**, an individual (the "Guarantor"), in favor of **MARYLAND SMALL BUSINESS DEVELOPMENT FINANCING AUTHORITY** (the "Authority").

WATERLAND FISHERIES, INC., a Michigan corporation (the "Borrower"), has requested that the Authority provide financial assistance to the Borrower in the form of a term loan in the original principal amount of Three Hundred Fifty Thousand Dollars ($350,000.00) (the "Loan"), to be used by the Borrower for working capital in accordance with the terms of that certain Approval Memorandum issued by the Authority on May 9, 2013 (as amended from time to time, the "Approval Memorandum"), and pursuant to the terms of that certain Loan and Security Agreement of even date herewith, by and between the Borrower and the Authority (as amended, restated, or amended and restated from time to time, the "Security Agreement"), and as evidenced by that certain Promissory Note of even date herewith from the Borrower as maker thereof and payable to the order of the Authority (as amended, restated, or amended and restated from time to time, the "Note"). The Loan and the Note will be secured by, among other things, the Security Agreement, covering the property described therein. In order to induce the Authority to extend the Loan and accept the Note and the Security Agreement, the Guarantor hereby covenants and agrees with the Authority as follows:

1.     **Guaranty**. The Guarantor hereby unconditionally and irrevocably guarantees to the Authority (a) the due and punctual payment in full (and not merely the collectibility) of all sums due to the Authority under the Note, as and when such sums are due; (b) the due and punctual payment in full (and not merely the collectibility) of all other sums and charges which may at any time be due and payable in accordance with, or secured by, the Note, the Security Agreement, or any other document evidencing or securing the Loan (collectively, the "Loan Documents"); and, (c) the due and punctual performance of all of the other terms, covenants and conditions contained in the Note and the other Loan Documents on the part of the Borrower to be performed.

2.     **Guaranty Unconditional**. The Guarantor expressly agrees that the Authority may, in its sole and absolute discretion, without notice to or further assent of the Guarantor and without in any way releasing, affecting or impairing the obligations and liabilities of the Guarantor hereunder; (a) waive compliance with, or any defaults under, or grant any other indulgences with respect to, the Note or any of the other Loan Documents; (b) modify, amend, or change any provisions of the Note or any of the other Loan Documents; (c) grant extensions or renewals of or with respect to the Note or the Loan and/or effect any release, subordination, compromise or settlement in connection with the Note or the Loan; (d) agree to the substitution, exchange, release or other disposition of all or any part of the collateral for the Note and the Loan; (e) make advances for the purpose of performing any term or covenant contained in any of the Loan Documents with respect to which the Borrower shall be in default; (f) assign or otherwise transfer the Note or any of the other Loan Documents or this Guaranty or any interest therein or herein; (g) deal in all respects with the Borrower as if this Guaranty were not in effect; and (h) effect any release, compromise or settlement with any one or more guarantors. The

Exhibit C

obligations of the Guarantor under this Guaranty shall be unconditional, irrespective of the genuineness, validity, regularity or enforceability of the Note, the Loan, or any security given therefor or in connection therewith or any other circumstances which might otherwise constitute a legal or equitable discharge of a surety or Guarantor.

**3.    Guaranty Primary.** The obligations and liability of the Guarantor under this Guaranty shall be primary, direct and immediate and not conditional or contingent upon pursuit by the Authority of any remedies it may have against the Borrower, with respect to the Note or the other Loan Documents, whether pursuant to the terms thereof or by law; and shall not be subject to any counterclaim, recoupment, set-off, reduction or defense based upon any claim that the Guarantor may have against the Borrower, the Authority or any other guarantor. Without limiting the generality of the foregoing, the Authority shall not be required to make any demand on the Borrower, or to sell at foreclosure or otherwise pursue or exhaust its remedies against the collateral or any part thereof and/or against the Borrower, before, simultaneously with or after enforcing its rights and remedies hereunder against the Guarantor. Any one or more successive and/or concurrent actions may be brought hereon against the Guarantor either in the same action, if any, brought against the Borrower or in separate actions, as often as the Authority may deem advisable.

**4.    Waivers by Guarantor.** The Guarantor hereby unconditionally and irrevocably waives (a) presentment and demand for payment of (i) any and all advances, losses and expenses of whatsoever kind or nature, including attorneys fees and expenses, which the Authority may sustain or incur by reason of having made, or advanced funds with respect to, the Loan and (ii) any and all payments, expenses and charges of whatsoever kind or nature, including attorneys fees and expenses, which the Authority may pay, sustain or incur in connection with any failure of the Borrower to pay in full when due any sum, expense or charge which may at any time be due and payable in accordance with, or secured by, the Note or any of the other Loan Documents, and protest of non-payment; (b) notice of acceptance of this Guaranty and of presentment, demand and protest; (c) notice of any default under this Guaranty or the Note or any of the Loan Documents and of any indulgences; (d) demand for observance or performance of, or enforcement of, any terms or provisions of this Guaranty or the Note or any of the other Loan Documents; (e) any right or claim of right to cause a marshalling of the assets of the Borrower; and (f) all other notices and demands otherwise required by law which the Guarantor may lawfully waive.

**5.    Enforcement Expenses.** Notwithstanding anything to the contrary contained in Section 11 below, the Guarantor shall indemnify and hold harmless the Authority against any loss, liability, or expense, including attorneys' fees and disbursements, and other fees and disbursements, that may result from any failure of the Borrower to pay any of the sums due under the Note or the Loan Documents when and as due and payable or that may be incurred by or on behalf of the Authority in enforcing any obligations or liabilities of the Borrower or the Guarantor.

**6.    Default.** The occurrence of any one (1) or more of the following events shall constitute an event of default (an "Event of Default") under this Guaranty: (a) the failure of the Guarantor to pay to the Authority as and when due and payable any and all amounts payable by

2



the Guarantor to the Authority under the provisions of this Guaranty; (b) the failure of the Guarantor to perform, observe, or comply with any of the provisions of this Guaranty; (c) the occurrence of any event of default (as defined therein) under (i) the Note or any of the other Loan Documents, or (ii) any other indebtedness from the Guarantor to the Authority; (d) if any information contained in any financial statement, application, schedule, report, or any other document given by the Guarantor, the Borrower, or any other person in connection with this Guaranty or the Loan, is not in all respects true and accurate or if the Guarantor, the Borrower, or such other person omitted to state any material fact or any fact necessary to make such information not misleading; (e) if the Guarantor generally is unable to pay the Guarantor's debts as they mature; (f) the filing of any petition for relief under the United States Bankruptcy Code (the "Code") or any similar federal or state statute by the Guarantor; (g) if the Guarantor is served with any petition for relief under the Code or any similar federal or state statute and such petition is not dismissed within sixty (60) days after the date on which the Guarantor is served with such a petition; (h) an application for the appointment of a receiver or custodian for, the making of a general assignment for the benefit of creditors by, or the insolvency of, the Guarantor; (i) the death of the Guarantor; (j) if the Guarantor should become a "Disabled Person" as defined by the Estates and Trusts Article of the Annotated Code of Maryland; (k) the sale or transfer of all or substantially all of the business assets of the Borrower; (l) the commencement of any proceeding to dissolve or liquidate the Borrower; (m) the occurrence of any change in the form of business entity through which the Borrower presently conducts its business; (n) the occurrence of any merger or consolidation involving the Borrower; (o) the sale, assignment, transfer, encumbrance, disposition or other conveyance of any interest in the Borrower; or (p) any change in the Borrower's name or trade name.

7.     **Subordination; Subrogation**.  If the Guarantor shall advance any sums to the Borrower or its successors or assigns or if the Borrower or its successors or assigns shall hereafter become indebted to the Guarantor, such sums and indebtedness shall be subordinate in all respects to the amounts then or thereafter due and owing to the Authority under the Note and the other Loan Documents.  Nothing herein contained shall be construed to give the Guarantor any right of subrogation in or to all or any part of the Authority's interest therein, until all amounts owing to the Authority have been paid in full.

8.     **Representations and Warranties**..  To induce the Authority to accept this Guaranty for the purposes for which it is given, the Guarantor represents and warrants to the Authority as follows: (a) any financial statement submitted by the Guarantor to the Authority, including any schedules and notes pertaining thereto, is true and complete, and fully and fairly presents the financial condition of the Guarantor at the date thereof and there have been no material adverse changes in the financial condition of the Guarantor from the date thereof to the date hereof, not disclosed to the Authority; (b) the Guarantor is not in default under or in violation of any agreement, contract, instrument, order, judgment, decree, statute, law, rule, or regulation to which the Guarantor is subject or by which the Guarantor is bound, and the execution, delivery and performance of this Guaranty will not (immediately or with the passage of time, the giving of notice, or both): (i) result in a default under any contract, agreement, instrument, order, judgment or decree to which the Guarantor is a party or by which the Guarantor or the Guarantor's property is bound; or (ii) result in the creation or imposition of any security interest in, or lien or encumbrance upon, any of the assets of the Guarantor except in

3

favor of the Authority; (c) the Guarantor has examined or has had an opportunity to examine the Note and each of the other Loan Documents prior to the date hereof; (d) this Guaranty when executed and delivered will be valid, binding, and fully enforceable against the Guarantor in accordance with its terms; (e) the Guarantor is obtaining substantial direct and indirect benefits arising from the Guarantor's execution and delivery of this Guaranty; (f) there are no judgments, injunctions or similar orders or decrees outstanding against the Guarantor and there are no claims, actions, suits or proceedings pending or, to the Guarantor's knowledge and belief, threatened against the Guarantor, or any of the Guarantor's property, at law or in equity, by or before any court or governmental authority which if determined adversely to the Guarantor would result in any material adverse change in the financial condition, assets or business prospects of the Guarantor; (g) the Guarantor has filed all federal, state, local and foreign tax returns which are required to be filed by the Guarantor, and the Guarantor has paid all federal, state, local and foreign taxes shown to be due on such tax returns or which have been assessed against the Guarantor; (h) the Guarantor is not in violation of, or to the Guarantor's knowledge and belief, under investigation with respect to or threatened to be charged with or given notice of a violation of, any law, rule, regulation or order;  (i) the Guarantor is not, and has not been, the subject of any bankruptcy, reorganization, insolvency, readjustment of debt, trusteeship, receivership, dissolution or liquidation proceeding; (j) the Guarantor has good and marketable title to all of the Guarantor's properties and assets, free and clear of all liens and security interests except for those which have been disclosed to the Authority in writing by the Guarantor; and (k) until the Borrower's obligations have been satisfied in full, the Guarantor shall not transfer or permit to be transferred in any manner to any party (including, but not limited to, a spouse) (i) any property or any interest in any property, real or personal, in which the Guarantor has an ownership interest as of the date hereof, or (ii) any property or interest in any property owned by any corporation, partnership, limited liability company or other entity in which the Guarantor has the sole or controlling interest as of the date hereof.  Notwithstanding the foregoing, the Guarantor may make transfers for fair consideration at arms length transactions, for social and charitable causes and for legitimate estate planning purposes provided such transfers do not render the Guarantor incapable of performing its obligations hereunder.

The Guarantor warrants and represents that all of the Guarantor's warranties and representations herein are true, correct, complete and not misleading in any respect and the Guarantor agrees to indemnify the Authority from any loss, cost or expense as a result of any representation or statement of the Guarantor, or any agent of the Guarantor, being false, incorrect, incomplete or misleading in any material respect.

9.    **Financial Statements**. As soon as possible but in no event later than December 31 of each year, the Guarantor shall provide to the Authority copies of the Guarantor's financial statements.  Guarantor shall provide copies of Guarantor's and federal and state tax returns within ten (10) days of filing the same each year.  The Guarantor also agrees to provide, with reasonable promptness, such additional information, reports or statements as the Authority may from time to time reasonably request.

10.    **Environmental Matters**. If the Borrower shall fail to comply with any terms and conditions of the Loan Documents requiring the removal, treatment or disposal of hazardous

4



materials or hazardous materials contamination, as defined in the Loan Documents, the Guarantor hereby unconditionally guarantees to the Authority that the Guarantor shall provide the Authority, within thirty (30) days after a demand by the Authority, with a bond, letter of credit or similar financial assurance evidencing to the Authority's satisfaction that the necessary funds are available to pay the cost of removing, treating and disposing of such hazardous materials or hazardous materials contamination and discharging any lien which may be established as a result thereof on any real property securing any of the Guarantor's obligations. The Guarantor further agrees to defend, indemnify and hold harmless the Authority from any and all claims, costs and expenses which may be asserted, imposed or incurred as a result of the presence of any hazardous materials or any hazardous materials contamination on any real property securing any of the Guarantor's obligations.

     11.   **Confessed Judgment**.  Upon the occurrence of an Event of Default, the Guarantor hereby authorizes any attorney at law to appear for it before any court having jurisdiction and to confess judgment against the Guarantor for the balance then due under the Note and/or the other Loan Documents together with interest, court costs and an attorney's fee of fifteen percent (15%) of the principal and interest then due under the Loan Documents. Notwithstanding the immediately foregoing sentence, upon payment in full to the Authority of all sums due hereunder, the Authority agrees that, in the event such fifteen (15%) percent collected for attorneys' fees exceeds the actual amount of attorneys fees incurred by the Authority, the Authority may refund to the Guarantor such excess amount. The Guarantor hereby releases, to the extent permitted by applicable law, all errors and all rights of exemption, appeal, stay of execution, inquisition, and other rights to which the Guarantor may otherwise be entitled under the laws of the United States of America or of any state or possession of the United States of America now in force and which may hereafter be enacted. The authority and power to appear for and enter judgment against the Guarantor shall not be exhausted by one or more exercises thereof or by any imperfect exercise thereof and shall not be extinguished by any judgment entered pursuant thereto. Such authority may be exercised on one or more occasions or from time to time in the same or different jurisdictions as often as the Authority shall deem necessary or desirable, for all of which this Guaranty shall be sufficient warrant.

     12.   **Expenses**.  Notwithstanding anything to the contrary contained in Section 11 above, the Guarantor promises to pay to the Authority on demand by the Authority all costs and expenses incurred by the Authority in connection with the collection and enforcement of this Guaranty or of any judgment entered in connection with this Guaranty including, without limitation, all reasonable attorneys' fees and expenses and all court costs. This Section 12 shall not be merged into any judgment entered in connection with this Guaranty, shall survive any such judgment, and shall be binding and conclusive upon the Guarantor for all time.

     13.   **Insolvency; Indemnification**.  Any modification, limitation or discharge of all or any part of the Borrower's obligations arising out of or by virtue of any bankruptcy, arrangement, reorganization or similar proceeding for relief of debtors under Federal or State law initiated by or against the Borrower and/or any other obligor shall not modify, limit, lessen, reduce, impair, discharge or otherwise affect the Guarantor's obligations hereunder in any manner whatsoever. If at any time any payment or portion thereof of the Borrower's obligations, whether made by or for the account of the Guarantor, is set aside by any court or trustee having

jurisdiction as a voidable preference or fraudulent conveyance or must otherwise be restored or returned by the Authority to the Borrower under any insolvency, bankruptcy or other federal and/or state laws, rules or regulations or as a result of any dissolution, liquidation or reorganization of the Borrower or upon or as a result of the appointment of any receiver, intervenor or conservator of, or trustee or similar officer of, the Borrower or any substantial part of the Borrower's properties or assets, or in connection with any compromise or settlement relating to any of the above, the Guarantor hereby agrees that this Agreement shall continue and remain in full force and effect or be reinstated, as the case may be, all as though such payments(s) had not been made.

14. **Governing Law**. The provisions of this Guaranty shall be construed, interpreted and enforced in accordance with the laws of the State of Maryland, without regard to principles of conflict of laws.

15. **Consent to Jurisdiction**. The Guarantor hereby acknowledges, consents and agrees that the United States District Court for the District of Maryland or any court of competent jurisdiction of the State of Maryland shall have jurisdiction in any proceeding instituted to enforce this Guaranty and any objections to venue are hereby waived.

16. **Waiver of Jury Trial**. **The Guarantor hereby waives trial by jury in any action or proceeding to which Guarantor and the Authority may be parties, arising out of or in any way pertaining to (a) this Guaranty, (b) the Note, (c) the Loan, or (d) any of the other Loan Documents.** It is agreed and understood that this waiver constitutes a waiver of trial by jury of all claims against all parties to such actions or proceedings, including claims against parties who are not parties to this Guaranty. This waiver is knowingly, willingly and voluntarily made by the Guarantor, and the Guarantor hereby represents that no representations of fact or opinion have been made by any individual to induce this waiver of trial by jury or to in any way modify or nullify its effect. The Guarantor further represents that the Guarantor has been represented, or has had the opportunity to be represented in the signing of this Guaranty and in the making of this waiver by independent legal counsel, selected of its own free will, and that the Guarantor has had the opportunity to discuss this waiver with counsel.

17. **Notices**. Any notice, demand, request or other communication which the Authority may desire to give to the Guarantor with respect to this Guaranty, shall be deemed to have been received when (a) delivered by hand, on the same day as such hand delivery, (b) delivered to an overnight courier, on the next business day, or (c) deposited in the mail postage prepaid, by registered or certified mail, on that day which is three (3) business days after such deposit in the mail, and addressed to the Guarantor at 5614 Oak Place, Bethesda, Maryland 20817.

18. **Remedies Cumulative**. All rights and remedies afforded to the Authority by reason of this Guaranty, the Note and any of the other the Loan Documents, or by law are separate and cumulative and the exercise of one shall not in any way limit or prejudice the exercise of any other such rights or remedies. No delay or omission by the Authority in exercising any such right or remedy shall operate as a waiver thereof. No waiver of any rights and remedies hereunder, and no modification or amendment hereof, shall be deemed made by the

6

Authority unless in writing and duly signed by the Authority. Any such waiver shall apply only to the particular instance specified therein and shall not impair the further exercise of such right or remedy or of any other right or remedy of the Authority and no single or partial exercise of any right or remedy hereunder shall preclude other or further exercise thereof or any other right or remedy.

     **19.**   **Severability.**  In case any provision (or part of any provision) contained in this Guaranty shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Guaranty but this Guaranty shall be construed as if such invalid, illegal or unenforceable provision (or part thereof) had never been contained herein but only to the extent it is invalid, illegal or unenforceable.

     **20.**   **Successors and Assigns**.  This Guaranty shall inure to the benefit of, and be enforceable by, the Authority and its successors and assigns, and shall be binding upon, and enforceable against, the Guarantor and the Guarantor's heirs, personal representatives, successors and assigns.

     **21.**   **Interpretation**.  The section headings used herein are for reference and convenience only and shall not enter into the interpretation hereof.  Wherever herein the singular number is used, the same shall include the plural, and the masculine gender shall include the feminine and neuter genders, and vice versa, as the context shall require.  Wherever in this Agreement a time period shall end on a day which is a Saturday, Sunday or legal holiday, which days shall not be deemed "business days," said time period shall be automatically extended to the next day which is not a Saturday, Sunday or legal holiday.

     **22.**   **Entire Agreement**.  This Guaranty, together with all of the other Loan Documents, constitutes the entire agreement by and between the Guarantor and the Authority in any way relating to this Guaranty.

     **WITNESS** the signature and seal of the Guarantor as of the day and year first above written.

**WITNESS:**

                             **GUARANTOR:**

_____          _____ (SEAL)

                                     Claud Anderson

            Acknowledgement appears on the following page.

ACKNOWLEDGEMENT PAGE
TO
GUARANTY OF PAYMENT

**STATE OF MARYLAND** )
)      **To Wit:**
**CITY OF BALTIMORE** )

On this _25_ day of _July_, 2013, before me, the undersigned, a Notary Public in and for said State, personally appeared Claud Anderson, known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same for the purposes therein expressed.

_Brenda Jeter_
Notary Public

My Commission Expires: _11-28-13_

Waterland Guaranty-01

8


## AMENDED AND RESTATED
## SUBORDINATION AND INTERCREDITOR AGREEMENT

**THIS AMENDED AND RESTATED SUBORDINATION AND INTERCREDITOR AGREEMENT** (this "Agreement") is made as of this 26th day of July, 2013, among **WATERLAND FISHERIES, INC.**, a Michigan corporation (the "Borrower"), **MARYLAND AGRICULTURAL AND RESOURCE-BASED INDUSTRY DEVELOPMENT CORPORATION**, a body politic and corporate and an instrumentality of the State of Maryland ("MARBIDCO"), **DELMARVA PREMIUM SEAFOOD COMPANY**, a Delaware corporation ("Delmarva"), **THE HARBOR BANK OF MARYLAND** ("Harbor Bank"), and **MARYLAND SMALL BUSINESS DEVELOPMENT FINANCING AUTHORITY** ("MSBDFA"). MARBIDCO, Delmarva, Harbor Bank and MSBDFA are sometimes referred to individually as a "Lender" and collectively as the "Lenders."

## RECITALS

1.     MARBIDCO has made a loan to the Borrower in the original principal amount of $300,000.00 (the "MARBIDCO Loan"). The MARBIDCO Loan is evidenced by a Deed of Trust Note dated June 27, 2008 (the "Original Closing Date") in the original principal amount of $300,000.00 made by the Borrower for the benefit of MARBIDCO, as amended by that certain: (i) First Deed of Trust Note Modification Agreement effective as of July 1, 2009; (ii) Second Deed of Trust Note Modification Agreement dated April 8, 2010, but effective as of January 1, 2010; (iii) Third Deed of Trust Modification Agreement dated January 4, 2011, but effective as of August 1, 2010; and (iv) a letter amendment dated as of the date hereof (collectively, and as the Deed of Trust Note may be further amended, restated and/or amended and restated from time to time, the "MARBIDCO Note").

2.     The MARBIDCO Loan is subject to the terms of a Loan Agreement dated the Original Closing Date made between the Borrower and MARBIDCO (as amended, restated and/or amended and restated from time to time, the "MARBIDCO Loan Agreement").

3.     The obligations of the Borrower to MARBIDCO for the MARBIDCO Loan and under the terms of the MARBIDCO Note and the MARBIDCO Loan Agreement are secured by: (i) a lien on certain real property of the Borrower, more particularly described in Exhibit A attached to this Agreement (the "Real Property"), pursuant to the terms of a Deed of Trust and Assignment of Leases and Rents dated Original Closing Date, made by the Borrower to the trustees named therein for the benefit of MARBIDCO which is recorded in the Land Records of Dorchester County, Maryland at Liber 876, folio 062 (as amended from time to time, the "MARBIDCO DOT"), and (ii) a lien on certain personal property and fixtures (the "MARBIDCO Personal Property") pursuant to the terms of a Security Agreement dated the Original Closing Date, made by the Borrower for the benefit of MARBIDCO (as amended from time to time, the "MARBIDCO Security Agreement").

4.     Harbor Bank has made two loans to the Borrower as follows: (i) the first in the original principal amount of $750,000.00, which was subsequently increased to $821,678.00 (the "First Harbor Bank Loan"), and (ii) the second in the original principal amount of

Exhibit D

$387,500.00 (the "Second Harbor Bank Loan"). The First Harbor Bank Loan is evidenced by a Term Loan Note dated the Original Closing Date in the original principal amount of $750,000.00 made by the Borrower for the benefit of Harbor Bank, which was amended by: (i) that certain Amended and Restated Term Loan Note dated September 17, 2009, pursuant to which the principal amount of the Term Loan Note was increased to $821,678.00 (the "First Amendment" and together with the Term Loan Note, as it may be further amended, restated and/or amended and restated from time to time, the "First Harbor Bank Note"). The Second Harbor Bank Loan is evidenced by a Bridge Loan Note dated the Original Closing Date in the original principal amount of $387,500.00 made by the Borrower for the benefit of Harbor Bank (as amended, restated and/or amended and restated from time to time, the "Second Harbor Bank Note").

5.      The First Harbor Bank Loan is subject to the terms of a Building Loan Agreement dated the Original Closing Date made between the Borrower and Harbor Bank (as amended, restated and/or amended and restated from time to time, the "Harbor Bank First Loan Agreement"). The Second Harbor Bank Loan is subject to the terms of a Building Loan Agreement dated the Original Closing Date made between the Borrower and Harbor Bank (as amended, restated and/or amended and restated from time to time, the "Harbor Bank Second Loan Agreement").

6.      The obligations of the Borrower to Harbor Bank for the First Harbor Bank Loan and under the terms of the First Harbor Bank Note and the Harbor Bank First Loan Agreement are secured by (i) a lien on the Real Property pursuant to the terms of a Deed of Trust and Assignment of Leases and Rents dated the Original Closing Date, made by the Borrower to the trustees named therein for the benefit of Harbor Bank which is recorded in the Land Records of Dorchester County, Maryland at Liber 846, folio 001, and which was amended by that certain Amendment to Deed of Trust and Assignment of Leases and Rents dated September 17, 2009 (together, and as they may be further amended, restated and/or amended and restated, the "First Harbor Bank DOT"), and (ii) a lien on personal property and fixtures (the "Harbor Bank Personal Property") pursuant to the terms of a Security Agreement dated the Original Closing Date, made by the Borrower for the benefit of Harbor Bank (as amended and restated from time to time, the "First Harbor Bank Security Agreement").

7.      The obligations of the Borrower to Harbor Bank for the Second Harbor Bank Loan and under the terms of the Second Harbor Bank Note and the Harbor Bank Second Loan Agreement are secured by: (i) a lien on the Real Property of the Borrower pursuant to the terms of a Second Deed of Trust and Assignment of Leases and Rents dated the Original Closing Date, made by the Borrower to the trustees named therein for the benefit of Harbor Bank which is recorded in the Land Records of Dorchester County, Maryland at Liber 846, folio 032 (the "Second Harbor Bank DOT"), and (ii) a lien on the Harbor Bank Personal Property pursuant to the terms of a Security Agreement dated the Original Closing Date, made by the Borrower for the benefit of Harbor Bank (the "Second Harbor Bank Security Agreement").

8.      The Borrower and Harbor Bank have consolidated the First Harbor Bank Loan and the Second Harbor Bank Loan into one loan in the principal amount of 1,049,365.45 (the "Present Harbor Bank Loan").

9.     The Present Harbor Bank Loan is evidenced by a Consolidated, Amended and Restated Promissory Note dated the as of the date of this Agreement in the original principal amount of $1,049,365.45 made by the Borrower for the benefit of Harbor Bank (as amended, restated and/or amended and restated from time to time, the "Present Harbor Bank Note").

10.    The Present Harbor Bank Loan is subject to the terms of a Consolidated, Amended and Restated Loan Agreement dated as of the date of this Agreement made between the Borrower and Harbor Bank (as amended, restated and/or amended and restated from time to time, the "Present Harbor Bank Loan Agreement").

11.    The obligations of the Borrower to Harbor Bank under the Present Harbor Bank Loan and under the terms of the Present Harbor Bank Note and the Present Harbor Bank Loan Agreement are secured by (i) a lien on the Real Property pursuant to the terms of a Consolidated, Amended and Restated Deed of Trust, Assignment of Leases and Rents and Security Agreement dated as of the date of this Agreement, made by the Borrower to the trustees named therein for the benefit of Harbor Bank which will be recorded in the Land Records of Dorchester County, Maryland (as amended, restated and/or amended and restated, the "Present Harbor Bank DOT"), and (ii) a lien on the Harbor Bank Personal Property pursuant to the terms of a Consolidated, Amended and Restated Security Agreement dated as of the date of this Agreement, made by the Borrower for the benefit of Harbor Bank (as it may be amended, restated and/or amended and restated from time to time, the "Present Harbor Bank Security Agreement").

12.    Delmarva has made a loan to the Borrower in the original principal amount of $750,000.00 (the "Delmarva Loan"). The Delmarva Loan is evidenced by a Promissory Note in the original principal amount of $750,000.00 dated the Original Closing Date (the "Original Delmarva Note"), made by the Borrower for the benefit of Delmarva, as amended by that certain letter amendment dated as of the date of this Agreement (the "Amendment to Promissory Note" and together with the Original Delmarva Note, as they may be amended, restated and/or amended and restated from time to time, the "Delmarva Note").

13.    The Delmarva Loan is subject to the terms of a Loan and Security Agreement dated the Original Closing Date made between the Borrower and Delmarva (as amended, restated and/or amended and restated from time to time, the "Delmarva Loan Agreement"). Under the terms of the Delmarva Loan Agreement, the Borrower has secured its obligations to Delmarva for the Delmarva Loan and under the Delmarva Note by a lien on all equipment of the Borrower as described in the Delmarva Loan Agreement (the "Delmarva Personal Property").

14.    MSBDFA has made a loan to the Borrower in the original principal amount of $350,000.00 (the "MSBDFA Loan"). The MSBDFA Loan is evidenced by a Promissory Note dated as of the date of this Agreement in the original principal amount of $350,000.00 (the "MSBDFA Note").

3

15.     The MSBDFA Loan is subject to the terms and conditions of a Loan and Security Agreement dated as of the date of this Agreement made between the Borrower and MSBDFA (the "MSBDFA Loan Agreement")

16.     The obligations of the Borrower to MSBDFA for the MSBDFA Loan and under the terms of the MSBDFA Note and the MSBDFA Loan Agreement are secured by (i) a lien on the Real Property pursuant to a Deed of Trust dated the date of this Agreement, made by the Borrower to the trustees named therein for the benefit of MSBDFA, which will be recorded among the Land Records of Dorchester County, Maryland (the "MSBDFA DOT"), (ii) an Assignment of Leases and Rents from Borrower to MSBDFA which will be recorded among the Land Records of Dorchester County, Maryland, and (iii) a lien on Borrower's personal property and fixtures (the "MSBDFA Personal Property") pursuant to the terms of the MSBDFA Loan Agreement.

17.     The Lenders desire hereby, among other things, to establish the relative rights and priorities of the aforementioned parties in and as to the Real Property and the MARBICO Personal Property, the Delmarva Personal Property, the Harbor Bank Personal Property and the MSBDFA Personal Property and MSBDFA has required, as a condition of providing the MSBDFA Loan, the execution and delivery of this Agreement by the other parties hereto.

**NOW, THEREFORE**, in consideration of good and valuable consideration, the receipt and sufficiency of which are acknowledged, parties hereby agree as follows:

1.      Real Property Subordination

(a)     Harbor Bank and MARBIDCO. MARBDICO hereby subordinates and waives the priority of MARBIDCO's lien on and security interest in any of the Real Property under the MARBIDCO DOT in favor of the lien and security interest of Harbor Bank in the Real Property under the First Harbor Bank DOT, the Second Harbor Bank DOT and the Present Harbor Bank DOT (collectively, the "Harbor Bank DOTs"), so that as between the MARBIDCO and Harbor Bank the lien and security interest of Harbor Bank in the Real Property shall be a prior and superior lien and security interest to the lien and security interest of MARBIDCO in any of the Real Property, with all the rights and remedies of a prior lien and security interest. MARBIDCO acknowledges that the lien on the Real Property under the MARBIDCO DOT includes a lien on certain equipment of the Borrower which is necessary for the use of the Borrower's buildings as shell buildings. MARBIDCO agrees that, notwithstanding Section 3 below, MARBIDCO's lien on equipment of the Borrower which is equipment necessary for the use of the Borrower's buildings as shell buildings shall also be subordinate to the lien of Harbor Bank under this Section 1.

(b)     Harbor Bank and MSBDFA. MSBDFA hereby subordinates and waives the priority of MSBDFA's lien on and security interest in any of the Real Property under the MSBDFA DOT in favor of the lien and security interest of Harbor Bank in the Real Property under the Harbor Bank DOTs, so that as between the MSBDFA and Harbor Bank the lien and security interest of Harbor Bank in the Real Property shall be a prior and superior lien and security interest to the lien and security interest of MSBDFA in any of the Real Property, with

4

all the rights and remedies of a prior lien and security interest. MSBDFA acknowledges that the lien on the Real Property under the MSBDFA DOT includes a lien on certain equipment of the Borrower which is necessary for the use of the Borrower's buildings as shell buildings. MSBDFA agrees that, notwithstanding Section 3 below, MSBDFA's lien on equipment of the Borrower which is equipment necessary for the use of the Borrower's buildings as shell buildings, but specifically excluding the 38 Water Tanks (defined below), shall also be subordinate to the lien of Harbor Bank under this Section 1.

      (c).    <u>MSBDFA and MARBIDCO</u>. MARBICO hereby subordinates and waives the priority of MARBIDCO's lien on and security interest in any of the Real Property under the MARBIDCO DOT in favor of the lien and security interest of MSBDFA in the Real Property under the MSBDFA DOT, so that as between the MARBIDCO and MSBDFA the lien and security interest of MSBDFA in the Real Property shall be a prior and superior lien and security interest to the lien and security interest of MARBIDCO in any of the Real Property, with all the rights and remedies of a prior lien and security interest. MARBIDCO acknowledges that the lien on the Real Property under the MARBIDCO DOT includes a lien on certain equipment of the Borrower which is necessary for the use of the Borrower's buildings as shell buildings. MARBIDCO agrees that, notwithstanding Section 3 below, MARBIDCO's lien on equipment of the Borrower which is equipment necessary for the use of the Borrower's buildings as shell buildings shall also be subordinate to the lien of MSBDFA under this Subsection 1(c).

      2.    <u>Real Property Subordination – Summary</u>. In summary of Section 1 above, for the duration of the term of this Agreement, the relative priorities of the liens of MARBIDCO, Harbor Bank and MSBDFA on the Real Property, as evidenced by the MARBIDCO DOT, the Harbor Bank DOTs and the MSBDFA DOT, regardless of when such instruments were recorded, are as follows:

| First Priority: | Harbor Bank |
|---|---|
| Second Priority: | MSBDFA |
| Third Priority: | MARBIDCO |

      3.    <u>Personal Property Subordination</u>.

      (a)    <u>Delmarva and MSBDFA</u>.

      (1) Subject to Subsection (a)(2), below, to the extent that the same personal property and fixtures, other than (i) the 38 recirculating tanks owned by the Borrower (the "Water Tanks") and (ii) any insurance proceeds paid, or to be paid by Selective Insurance Company to Borrower under claim number 212743371 (the "Insurance Proceeds"), is included in the terms Delmarva Personal Property and MSBDFA Personal Property, MSBDFA hereby subordinates and waives the priority of MSBDFA's lien on and security interest in the MSBDFA Personal Property under the MSBDFA Loan Agreement (other than the Water Tanks and the Insurance Proceeds, which are hereinafter together referred to as the "Special Collateral") in favor of the lien and security interest of Delmarva in the Delmarva Personal Property (other than the Special Collateral) under the Delmarva Loan Agreement, so that as



between MSBDFA and Delmarva the lien and security interest of Delmarva in the Delmarva Personal Property (other than the Special Collateral) shall be a prior and superior lien and security interest to the lien and security interest of MSBDFA in the same personal property and fixtures (other than the Special Collateral), with all the rights and remedies of a prior lien and security interest.

(2) In connection with the Special Collateral, Delmarva hereby subordinates and waives the priority of Delmarva's lien on and security interest in the Special Collateral under the Delmarva Loan Agreement in favor of the lien and security interest of MSBDFA in the Special Collateral under the MSBDFA Loan Agreement, so that as between MSBDFA and Delmarva, the lien and security interest of MSBDFA in the Special Collateral shall be a prior and superior lien and security interest to the lien and security interest of Delmarva in the Special Collateral, with all the rights and remedies of a prior lien and security interest.

(b)    Delmarva and MARBIDCO.

(1)    Subject to Subsection (b)(2), below, to the extent that the same personal property and fixtures, other than the Insurance Proceeds, is included in the terms Delmarva Personal Property and MARBIDCO Personal Property, MARBIDCO hereby subordinates and waives the priority of MARBIDCO's lien on and security interest in the MARBIDCO Personal Property (other than the Insurance Proceeds) under the MARBIDCO Security Agreement in favor of the lien and security interest of Delmarva in the Delmarva Personal Property (other than the Insurance Proceeds) under the Delmarva Loan Agreement, so that as between MARBIDCO and Delmarva the lien and security interest of Delmarva in the Delmarva Personal Property (other than the Insurance Proceeds) shall be a prior and superior lien and security interest to the lien and security interest of MARBIDCO in the same personal property and fixtures, with all the rights and remedies of a prior lien and security interest.

(2) In connection with the Insurance Proceeds, Delmarva hereby subordinates and waives the priority of Delmarva's lien on and security interest in the Insurance Proceeds under the Delmarva Loan Agreement in favor of the lien and security interest of MARBIDCO in the Insurance Proceeds under the MARBIDCO Security Agreement, so that as between MARBIDCO and Delmarva, the lien and security interest of MARBIDCO in the Insurance Proceeds shall be a prior and superior lien and security interest to the lien and security interest of Delmarva in the same Insurance Proceeds, with all the rights and remedies of a prior lien and security interest.

(c)    Delmarva and Harbor Bank.

(1)    Subject to Subsection (c)(2), below, to the extent that the same personal property and fixtures, other than the Insurance Proceeds, is included in the terms Delmarva Personal Property and Harbor Bank Personal Property, Harbor Bank hereby subordinates and waives the priority of Harbor Bank's lien on and security interest in the Harbor Bank Personal Property (other than the Insurance Proceeds) under the First Harbor Bank Security Agreement, the Second Harbor Bank Security Agreement and the Present Harbor Bank

Security Agreement (collectively, the "Harbor Bank Security Agreements"), in favor of the lien and security interest of Delmarva in the Delmarva Personal Property (other than the Insurance Proceeds) under the Delmarva Loan Agreement, so that as between Delmarva and Harbor Bank the lien and security interest of Delmarva in the Delmarva Personal Property (other than the Insurance Proceeds) shall be a prior and superior lien and security interest to the lien and security interest of Harbor Bank in the same personal property and fixtures (other than the Insurance Proceeds), with all the rights and remedies of a prior lien and security interest.

(2) In connection with the Insurance Proceeds, Delmarva hereby subordinates and waives the priority of Delmarva's lien on and security interest in the Insurance Proceeds under the Delmarva Loan Agreement in favor of the lien and security interest of Harbor Bank in the Insurance Proceeds under the Harbor Bank Security Agreements, so that as between Harbor Bank and Delmarva, the lien and security interest of Harbor Bank in the Insurance Proceeds shall be a prior and superior lien and security interest to the lien and security interest of Delmarva in the same Insurance Proceeds, with all the rights and remedies of a prior lien and security interest.

(d)    MARBIDCO and Harbor Bank.

1.    Subject to Subsection (d)(2), below, to the extent that the same personal property and fixtures, other than the Insurance Proceeds, is included in the terms MARBIDCO Personal Property and Harbor Bank Personal Property, Harbor Bank hereby subordinates and waives the priority of Harbor Bank's lien on and security interest in any of the Harbor Bank Personal Property (other than the Insurance Proceeds) under the Harbor Bank Security Agreements in favor of the lien and security interest of MARBIDCO in the MARBIDCO Personal Property (other than the Insurance Proceeds) under the MARBIDCO Security Agreement, so that as between MARBIDCO and Harbor Bank the lien and security interest of MARBIDCO in the MARBIDCO Personal Property (other than the Insurance Proceeds) shall be a prior and superior lien and security interest to the lien and security interest of Harbor Bank in the same personal property and fixtures (other than the Insurance Proceeds), with all the rights and remedies of a prior lien and security interest.

(2) In connection with the Insurance Proceeds, MARBIDCO hereby subordinates and waives the priority of MARBIDCO's lien on and security interest in the Insurance Proceeds under the MARBIDCO Security Agreement in favor of the lien and security interest of Harbor Bank in the Insurance Proceeds under the Harbor Bank Security Agreements, so that as between Harbor Bank and MARBIDCO, the lien and security interest of Harbor Bank in the Insurance Proceeds shall be a prior and superior lien and security interest to the lien and security interest of MARBIDCO in the same Insurance Proceeds, with all the rights and remedies of a prior lien and security interest.

(e)    MSBDFA and MARBIDCO.

1.    Subject to Subsection (e)(2), below, to the extent that the same personal property and fixtures, other than the Special Collateral, is included in the terms MSBDFA Personal Property and MARBIDCO Personal Property, MSBDFA hereby

subordinates and waives the priority of MSBDFA's lien on and security interest in the MSBDFA Personal Property (other than the Special Collateral) under the MSBDFA Security Agreement in favor of the lien and security interest of MARBIDCO in the MARBIDCO Personal Property (other than the Special Collateral) under the MARBIDCO Security Agreement, so that as between MARBIDCO and MSBDFA the lien and security interest of MARBIDCO in the MARBIDCO Personal Property (other than the Special Collateral) shall be a prior and superior lien and security interest to the lien and security interest of MSBDFA in the same personal property and fixtures, with all the rights and remedies of a prior lien and security interest.

(2) In connection with the Special Collateral, MARBIDCO hereby subordinates and waives the priority of MARBIDCO 's lien on and security interest in the Special Collateral under the MARBIDCO Security Agreement in favor of the lien and security interest of MSBDFA in the Special Collateral under the MSBDFA Loan Agreement, so that as between MSBDFA and MARBIDCO, the lien and security interest of MSBDFA in the Special Collateral shall be a prior and superior lien and security interest to the lien and security interest of MARBIDCO in the same Special Collateral, with all the rights and remedies of a prior lien and security interest.

(f)    MSBDFA and Harbor Bank.

(1)    Subject to Subsection (f)(2), below, to the extent that the same personal property and fixtures (other than the Water Tanks), is included in the terms Harbor Bank Personal Property and MSBDFA Personal Property, MSBDFA hereby subordinates and waives the priority of MSBDFA's lien on and security interest in the MSBDFA Personal Property under the MSBDFA Loan Agreement (other than the Water Tanks) in favor of the lien and security interest of Harbor Bank in the Harbor Bank Personal Property (other than the Water Tanks) under the Harbor Bank Security Agreements, so that as between MSBDFA and Harbor Bank the lien and security interest of Harbor Bank in the Harbor Bank Personal Property (other than the Water Tanks) shall be a prior and superior lien and security interest to the lien and security interest of MSBDFA in the same personal property and fixtures (other than the Water Tanks), with all the rights and remedies of a prior lien and security interest.

(2) In connection with the Water Tanks, Harbor Bank hereby subordinates and waives the priority of Harbor Bank's lien on and security interest in the Water Tanks under the Harbor Bank Security Agreements in favor of the lien and security interest of MSBDFA in the Water Tanks under the MSBDFA Loan Agreement, so that as between MSBDFA and Harbor Bank, the lien and security interest of MSBDFA in the Water Tanks shall be a prior and superior lien and security interest to the lien and security interest of Harbor Bank in the Water Tanks, with all the rights and remedies of a prior lien and security interest.

4.    Personal Property Subordination – Summary.  In summary of Section 3, above, for the duration of the term of this Agreement, the relative priorities of the liens and security interests of the Lenders on the Personal Property are as follows:

First Priority:     Delmarva, with the exception of (i) the Water Tanks, with respect to which its lien and security interest shall have a second priority, and (ii) the Insurance Proceeds, with respect to which its lien and security interest shall have a fourth priority.

Second Priority:    MARBIDCO, with the exception of the Special Collateral, with respect to which its lien and security interest shall have a third priority.

Third Priority:     Harbor Bank, with the exception of (i) the Water Tanks, with respect to which its lien and security interest shall have a fourth priority, and (ii) the Insurance Proceeds, with respect to which its lien and security interest shall have a first priority.

Fourth Priority:    MSBDFA, with the exception of (i) the Water Tanks, with respect to which its lien and security interest shall have a first priority, and (ii) the Insurance Proceeds, with respect to which its lien and security interest shall have a second priority.

5.     Access to Equipment. In the event Harbor Bank comes to own or control the Real Property, Harbor Bank agrees to permit Delmarva, MARBIDCO or MSBDFA, as the case may be, to store all personal property on the Real Property and to have access to the Real Property in order to safe guard, show, remove, and otherwise deal with the personal property for a period of up to 90 days from the date that Harbor Bank receives written notices of a default from Delmarva, MARBIDCO, and/or MSBDFA provided, that Delmarva, MARBIDCO, and/or MSBDFA (as the case may be) shall pay all reasonable costs incurred by Harbor Bank in connection with Delmarva's, MARBIDCO's or MSBDFA's activities on the Real Property and repair any damage caused by such activities.

6.     Amendments to Documents: Readvances and Refinancings. The Lenders will not amend any loan document executed in connection with their respective loans without the prior written consent of the non-amending parties. In addition, the Lenders will not make any readvance under the terms of their respective loan documents or refinance their respective loans if after a proposed readvance or refinancing the outstanding principal balance of the loan would exceed the outstanding principal balance of that loan immediately prior to the readvance or refinancing, without the prior written consent of the non-amending parties.

7.     Representations and Warranties of Lenders. The Lenders represent and warrant, each to the other, that:

(a)     Each Lender has all requisite power and authority to enter into this Agreement.

(b)     This Agreement has been duly authorized by all necessary action on the part of each Lender, and has been duly executed and delivered by an authorized officer thereof.

9

(c) This Agreement constitutes the valid and binding obligation of the Lenders, enforceable in accordance with its terms, subject to the following: (i) applicable bankruptcy, insolvency, reorganization, moratorium, and other laws affecting the rights of creditors generally; and (ii) the exercise of judicial discretion in accordance with general principles of equity.

8.    Communications. The Lenders shall each provide the other with written notice promptly upon the occurrence of an event of default under their respective loan documents and, following an event of default, shall copy each other on all communications with the Borrower.

9.    Notices.

(a)    All communications between the parties under the terms of this Agreement shall be in writing.

(b)    Any communication shall (a) when mailed, be effective three business days after it is deposited in the mails, and (b) when sent for next day delivery by a reputable overnight courier service, be effective one business day after sending. Communications shall be delivered to the office of the addressee, as follows:

(i)    Communications to MARBIDCO shall be mailed to:

Maryland Agricultural and Resource-Based Industry
 Development Corporation
1410 Forest Drive, Suite 26
Annapolis, Maryland 21403
Attention:  Executive Director

(ii)    Communications to the Harbor Bank shall be mailed to:

'The Harbor Bank of Maryland
25 W. Fayette Street
Baltimore, Maryland 21201
Attention: Carla Nealy, Senior Vice President

(iii)    Communications to the Delmarva shall be mailed to:

Delmarva Premium Seafood Company 200 Highpoint Drive,
Suite 215
Chalfont, Pennsylvania 18914
Attention: Michael Thomas

(iv)    Communications to MSBDFA shall be mailed to:

MARYLAND SMALL BUSINESS
DEVELOPMENT FINANCING AUTHORITY
401 East Pratt Street, 17th Floor

Baltimore, Maryland 21202
Attn: Financing Programs Accounting and Administration

With a copy to:

MERIDIAN MANAGEMENT GROUP, INC.
826 E. Baltimore Street
Baltimore, Maryland 21202
Attn: Anthony L. Williams, Vice President

(v)      Communications to the Borrower shall be mailed to:

5614 Oak Place
Bethesda, Maryland 20187
Attention: Claud Anderson

(c)      The parties may change their notice addresses by sending written notice to the other parties.

10.    <u>Amendments to Agreement</u>. All amendments .to this Agreement must be in writing and duly executed by an authorized officer of each Lender to be binding and enforceable, but shall not require the consent of the Borrower or any other person.

11.    <u>Severability</u>. The invalidity of any part of this Agreement shall not affect the validity of the remaining provisions of this Agreement.

12.    <u>Assignment</u>. Each Lender may, without notice to, or consent of, of any other party transfer any part of their respective loans to any person, and each such person shall have the right to enforce, and be subject to, the provisions of this Agreement as fully as the Lenders

13.    <u>Continuing Agreement</u>. This Agreement shall exist in full force and effect until the obligations of the Borrower to three of the four Lenders (i.e., Delmarva, MARBIDCO, Harbor Bank and MSBDFA) under their respective loan documents are indefeasibly paid in full.

14.    <u>Binding Effect</u>. This Agreement shall be binding upon the Borrower and upon the Lenders and their respective successors and permitted assigns.

15.    <u>Governing Law</u>. This Agreement shall be governed by, and construed in accordance with, the laws of the State of Maryland. The Lenders to this Agreement irrevocably submit to the jurisdiction of any state or federal court sitting in the State of Maryland over any proceeding arising out of, or relating to, this Agreement. Notwithstanding the foregoing, any lawsuit brought by Borrower or a Lender against MSBDFA, MARBIDCO, and/or Harbor Bank shall be brought only in a state court of Maryland.

16.    <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be an original, but all of which, when taken together, shall constitute one document.

17.   <u>No Other Rights</u>. If any Lender enforces its rights or remedies under their respective loan documents in violation of the terms of this Agreement, the Borrower shall not be entitled to use the violation as a defense to any action by any Lender, nor shall the Borrower be entitled to assert the violation as a counterclaim or basis for set-off or recoupment against any Lender. The provisions of this Agreement are not intended, nor shall they be construed, to confer upon the Borrower or any person other than the Lenders any rights or remedies under this Agreement.

18.   <u>Further Assurances</u>. So long as this Agreement remains in effect, the Borrower and the Lenders shall execute, acknowledge, and deliver upon the reasonable demand of the other parties, any further documents or instruments (whether or not in recordable form) for the purpose of further confirming the agreements set forth in this Agreement.

19.   <u>Terminology; Headings; Time of Essence</u>. All singular terms used in this Agreement shall be deemed to include the plural and vice versa. All section headings used in this Agreement are for convenience of reference only and shall not constitute a substantive part of this Agreement. Time is of the essence of this Agreement.

20.   <u>Recordation</u>. This Agreement shall be filed in the Land Records of Dorchester County, Maryland.

21.   <u>Document References</u>. All documents referred to in this Agreement shall include all amendments, substitutions, and replacements of those documents.

22.   <u>Acknowledgement</u>. Notwithstanding anything in this Agreement to the contrary, the Lenders acknowledge and agree that as of the date hereof, the principal amount of the Present Harbor Bank Loan is $1,049,365.45 and it is that amount plus any accrued but unpaid interest and all other amounts becoming due under the Harbor Bank DOTs, as identified therein, that are secured by the Harbor Bank DOTs.

[SIGNATURES BEGIN ON THE NEXT PAGE.]

**IN WITNESS WHEREOF,** the parties have caused this Agreement to be executed, sealed, and delivered as of the day and year first written above.

WITNESS/ATTEST:                    **MARYLAND AGRICULTURAL AND RESOURCE-BASED INDUSTRY DEVELOPMENT CORPORATION**

Name: 7/25/13                      By: _____
                                   Stephen R. McHenry, Executive Director

**STATE OF MARYLAND**
**CITY/COUNTY OF** Harford **, TO WIT:**

I HEREBY CERTIFY that on this 26th day of _____July_____, 2013, before me, the undersigned, a Notary Public of the State of Maryland, personally appeared Stephen R. McHenry, known to me or satisfactorily proven to me, to be the person whose name is subscribed to the foregoing Amended and Restated Subordination and Intercreditor Agreement, who acknowledged to me that he executed the same in his capacity as the Executive Director of Maryland Agricultural and Resource-Based Industry Development Corporation, being duly authorized to do so for the purposes and consideration therein expressed.

WITNESS my hand and Notarial Seal.

_____
Notary Public

My Commission Expires: June 4, 2014

13

**IN WITNESS WHEREOF,** the parties have caused this Agreement to be executed, sealed, and delivered as of the day and year first written above.

WITNESS/ATTEST:                          THE HARBOR BANK OF MARYLAND

*Brenda Jeter*

Name: *Brenda Jeter*

By: _____
       Stanley Arnold, Vice President


STATE OF MARYLAND
CITY/COUNTY OF _____Baltimore_____, TO WIT:

I HEREBY CERTIFY that on this 25 day of July , 2013, before me, the undersigned, a Notary Public of the State of Maryland, personally appeared Stanley Arnold, known to me or satisfactorily proven to me, to be the person whose name is subscribed to the foregoing Amended and Restated Subordination and Intercreditor Agreement, who acknowledged to me that he executed the same in his capacity as the Vice President of The Harbor Bank of Maryland, being duly authorized to do so for the purposes and consideration therein expressed.

WITNESS my hand and Notarial Seal.

*Brenda Jeter*
Notary Public

My Commission Expires: 11-28-13

14



**IN WITNESS WHEREOF**, the parties have caused this Agreement to be executed, sealed, and delivered as of the day and year first written above.

**WITNESS/ATTEST:**                    **DELMARVA PREMIUM**
                                        **SEAFOOD COMPANY**

Name: Gordan Gadsden                   By: _____
                                            Michael Thomas, Vice President

**STATE OF** PA
**CITY/COUNTY OF** PHILADELPHIA, **TO WIT:**

I HEREBY CERTIFY that on this 25th day of July, 2013, before me, the undersigned, a Notary Public of the State of Maryland, personally appeared Michael Thomas, known to me or satisfactorily proven to me, to be the person whose name is subscribed to the foregoing Amended and Restated Subordination and Intercreditor Agreement, who acknowledged to me that he executed the same in his capacity as the Vice President of Delmarva Premium Seafood Company, being duly authorized to do so for the purposes and consideration therein expressed.

WITNESS my hand and Notarial Seal.

_____
Notary Public

My Commission Expires: May 7th 2013

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
RICHARD BAYE, Notary Public
City of Philadelphia, Phila. County
My Commission Expires May 7, 2017



**IN WITNESS WHEREOF,** the parties have caused this Agreement to be executed, sealed, and delivered as of the day and year first written above.

WITNESS/ATTEST:

_____Dana Carter_____

Name: _____

**MARYLAND SMALL BUSINESS DEVELOPMENT FINANCING AUTHORITY**

By: _____Celester Hall_____

Celester A. Hall, Director
Small Business Financing, DBED

**STATE OF MARYLAND**
**CITY/COUNTY OF** _Baltimore_, **TO WIT:**

I HEREBY CERTIFY that on this _26th_ day of _July_, 2013, before me, the undersigned, a Notary Public of the State of Maryland, personally appeared Celester A. Hall, known to me or satisfactorily proven to me, to be the person whose name is subscribed to the foregoing Amended and Restated Subordination and Intercreditor Agreement, who acknowledged to me that he executed the same in his capacity as the Director, Small Business Financing, Maryland Department of Business and Economic Development, being duly authorized to do so for the purposes and consideration therein expressed.

WITNESS my hand and Notarial Seal.

_____Gloria M. Shryock_____
Notary Public

Commission Expires: _Feb. 5, 2017_

16

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be executed, sealed, and delivered as of the day and year first written above.

**WITNESS/ATTEST:**                                    **WATERLAND FISHERIES, INC.**

By: _~~(signature)~~_____

Name: _Werner M. Schad_                    Claud Anderson, President
                                                        and Chief Executive Officer

**STATE OF MARYLAND**
**CITY/COUNTY OF** _Baltimore_ **TO WIT:**

I HEREBY CERTIFY that on this _25_ day of _July_____, 2013, before me, the undersigned, a Notary Public of the State of Maryland, personally appeared Claud Anderson, known to me or satisfactorily proven to me, to be the person whose name is subscribed to the foregoing Amended and Restated Subordination and Intercreditor Agreement, who acknowledged to me that he executed the same in his capacity as the President and Chief Executive Officer of Waterland Fisheries, Inc., being duly authorized to do so for the purposes and consideration therein expressed.

WITNESS my hand and Notarial Seal.

_Brenda Jett_____
Notary Public

17

# Exhibit A

## PARCEL A:

ALL that lot, piece or parcel of land situate, lying and being in the Fifteen or Hurlock Election District of Dorchester County, State of Maryland, and lying on the east of Nealson Street and more particularly described as follows, that is to say:

All that lot, piece or parcel of property as shown and delineated as "PARCEL-2, 10.616 AC" upon a survey plat entitled "SURVEY OF THE LAND OF AMERICAN STORES REALTY CORP., Town of Hurlock, Dorchester County, MD.," prepared by Andrews, Miller & Assoc., Inc., dated June 8, 1981, and recorded among the Plat Records for Dorchester County, Maryland, in Liber No. 27, folio 22, containing 10.616 acres of land, or less;

SAVING AND EXCEPTING THEREFROM, all of that lot, piece or parcel of property which was conveyed unto Waterland Fisheries, Inc., by Delmarva Premium Seafood Company, by deed dated April 16, 2007, and recorded among the Land Records for Dorchester County, Maryland, in Liber No. 806, folio 53, containing 2.00 acres of land, and being all of that lot, piece or parcel of property more particularly shown and delineated as "LOT No. 1 AREA = 2.00 ACRES" upon a survey plat entitled "Plat Showing Subdivision of a Portion of the Land of Koski Properties, Inc.," prepared by Tim Marshall & Associates, Inc., and recorded among the Plat Records for Dorchester County, Maryland in Liber No. 45, folio 123.

AND SAVING AND EXCEPTING THEREFROM, all of that lot, piece or parcel of property which was conveyed unto The Mayor and Council of the Town of Hurlock, Maryland, A Maryland Municipal Corporation by Koski Properties, Inc., by deed dated October 17, 1996, and recorded among the Land Records of Dorchester County, Maryland, in Liber No. 346, folio 645, containing 5,100 square of land.

THE parcel of property being conveyed herein containing 8.306 acres of land, more or less, and being the "Residue" parcel shown on the aforesaid Plat recorded in Liber 45, folio 123.

BEING the fee simple property which, by Deed dated August 8, 2007, and recorded August 23, 2007 in the Land Records of the County of Dorchester, Maryland, in Liber 0825, Folio 0529, was granted and conveyed by JGR Real Estate, LLC unto Waterland Fisheries, Inc.

## PARCEL B:

ALL that lot, piece or parcel of land situate, lying and being in the 15th Election District of Dorchester County, State of Maryland, in the Town of Hurlock, and being more particularly described as follows:

BEGINNING for the same at an iron rod and cap now set on the easterly side of Nealson Street, at its intersection with the northerly side of Andrews Street. Said place of

 

## Exhibit A
*(continued)*

beginning more particularly being located at a distance of 10.07 feet measured in a North 19 degrees 31 minutes 40 seconds west direction from a boat spike heretofore set at the beginning of the first line of Parcel 2 of this land which by deed dated June 24, 1994 and recorded among the land records of Dorchester County, Maryland in Liber P.L.C. No. 307, folio 562 was conveyed by Matt, Inc. to Koski Properties, Inc. Thence leaving the said place of beginning and running and binding with the easterly said of the said Nealson Street as now surveyed (1) North 19 degrees 31 minutes 40 seconds West 317.03 feet to an iron rod and cap heretofore set at the end of the first line of the said parcel 2. Thence leaving the said Nealson Street and running and binding with a portion of the second line of the aforesaid Parcel 2 (2) North 62 degrees 15 minutes 40 seconds east 255.45 feet to an iron road and cap not set. Thence leaving the said second line and running for new lines of division through the land which the parcel now being described is a part of the two following courses and distances viz (3) South 26 degrees 27 minutes 30 seconds East 320.42 feet, thence running and binding with the northerly said of a 10 foot future widening easement located on the northerly side of Andrews Street (4) South 63 degrees 32 minutes 30 seconds West 293.64 feet to the place of beginning CONTAINING 2.00 (erroneously recited as 200 on a Deed recorded in Liber 806 at folio 83) ACRES OF LAND and being shown as Lot No. 1 on a plat entitled "SUBDIVISION AND FOREST CONSERVATION PLAN OF A PORTION OF THE LAND OF KOSKI PROPERTIES, INC.", prepared by Tim Marshall & Associates, Inc. on June 25, 1996 and recorded among the plat records of Dorchester County, in Plat cabinet No. 45, folios 123A, 123B and 124A.

SUBJECT HOWEVER TO the setback lines, utility easements, roads rights-of-way, conditions, and restrictions appearing on a plat entitled "SUBDIVISION AND FOREST CONSERVATION PLAT OF A PORTION OF LAND OF KOSKI PROPERTIES, INC.", prepared by Tim Marshall & Associates, Inc. on June 25, 1996 and recorded among the plat records of Dorchester County, in Plat cabinet No. 45, folios 123A, 123B and 124A.

BEING the fee simple property which, by Deed dated April 16, 2007, and recorded May 7, 2007 in the Land Records of the County of Dorchester, Maryland, in Liber 0806, Folio 0083, was granted and conveyed by Delmarva Premium Seafood Company unto Waterland Fisheries, Inc

NOTE: The above Parcel A and Parcel B have been combined into one parcel for assessment and taxation purposes by Deed of Consolidation from Waterland Fisheries, Inc. to Waterland Fisheries, Inc. dated August 9, 2007 and recorded August 23, 2007 among the Land Records of the County of Dorchester, Maryland, in Liber 825 at folio 540.

The improvements thereon being known as 299 Nealson Street, Hurlock, MD 21643.

Tax ID #: 15-024135

After Recording Return to:
Work Flow Coordinator
Financing Programs Accounting and Administration
401 East Pratt Street, 17th Floor
Baltimore, Maryland 21202



**DOUGLAS F. GANSLER**
*Attorney General*

**JOHN B. HOWARD, JR.**
*Chief Deputy Attorney General*

**DANIEL L. BARNETT**
*Deputy Attorney General*

**LAILA ATALLAH**
*Assistant Attorney General*
*Counsel to the Department*

**BARBARA CURNIN KOUNTZ**
*Assistant Attorney General*
*Deputy Counsel to the Department*

**STATE OF MARYLAND**
**OFFICE OF THE ATTORNEY GENERAL**
DEPARTMENT OF BUSINESS AND ECONOMIC DEVELOPMENT

October 24, 2014

**ILENE S. GARTEN**
**IRA SCHWARTZ**
**W. DAVID RAWLE**
**DAVID M. PORTER**
**COLLEEN A. LAMONT**
**LARA L. HJORTSBERG**
**WILLIAM J. CHEN III**
*Assistant Attorneys General*
e-mail: David.Rawle@maryland.gov
TOLL FREE: 1-888-CHOOSEMD

(410) 767-6381
WRITER'S DIRECT DIAL NO.

**VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED**
**AND BY REGULAR MAIL**

Dr. Claud Anderson
5614 Oak Place
Bethesda, Maryland 20187

RE: $300,000 Loan from the Maryland Agricultural and Resource-Based Industry Development Corporation (the "Lender") to Waterland Fisheries, Inc. (the "Borrower") – DEFAULT NOTICE

Dear Sir:

The Borrower is currently indebted to the Lender for a loan in the original principal amount of $300,000 (the "Loan"), evidenced by a Deed of Trust Note dated as of June 27, 2008, made by the Borrower for the benefit of the Lender, as amended by (i) a First Deed of Trust Note Modification Agreement dated as of September 8, 2009, effective as of July 1, 2009, made between the Borrower and the Lender, (ii) a Second Deed of Trust Note Modification Agreement dated as of April 8, 2010, effective as of January 1, 2010, made between the Borrower and the Lender, and (iii) a Third Deed of Trust Note Modification Agreement dated as of January 4, 2011, effective as of August 1, 2010, made between the Borrower and the Lender (collectively, the "Note"). The terms of the Loan are governed by a Loan Agreement dated as of June 27, 2008, between the Borrower and the Lender (the "Loan Agreement"). Repayment of the Loan is secured by (i) a lien on real property owned by the Borrower located in Dorchester County, Maryland under the terms of a Deed of Trust and Assignment of Leases and Rents dated as of June 27, 2008, made by the Borrower to Stephen R. McHenry and W. David Rawle. as trustees for the benefit of the Lender, and recorded in the Land Records of Dorchester County at Liber 876, folio 62 (the "Deed of Trust"), and (ii) a lien on personal property pursuant to a Security Agreement dated as of June 27, 2008, made by the Borrower in favor of the Lender. Repayment of the Loan was guaranteed by Claud Anderson (the "Guarantor"), under the terms of a Personal Guaranty Agreement dated as of June 27, 2008, made by the Guarantor for the benefit of the Lender (the "Guaranty"), (the Note, the Loan Agreement, the Deed of Trust, the Security

Dr. Claud Anderson
October 24, 2014
Page 2

Agreement, the Guaranty, and all other documents executed or recorded in connection with the Loan, as any of them may be amended, are collectively referred to as the "Loan Documents").

The Borrower has failed to make the monthly payments under the Note due on June 1, 2014, July 1, 2014, August 1, 2014, September 1, 2014, and October 1, 2014, and, by letter to the Borrower dated October 24, 2014, the Loan was declared in default under the terms of the Loan Documents. By the same letter, the Lender accelerated the Loan and demanded repayment of the entire outstanding principal amount of the Loan, together with accrued interest at the rate of 3% per annum and all fees.

Under the terms of the Guaranty, a default under any of the Loan Documents constitutes a default under Guaranty. Therefore, the Lender hereby demands that the Guarantor repay the full amount of the Loan, together with accrued interest and all fees. The amount due as of November 24, 2014 is $241,596.93. **If payment of this amount is not received by November 24, 2014, the Lender may pursue its legal remedies against the Borrower and/or the Guarantor, including without limitation, foreclosure on any collateral and/or the recovery of all monies due or to become due through the date of the filing of a civil action against the Borrower and/or the Guarantor, together with and interest thereon and fees.** In addition, if payment is not received by November 24, 2014, the interest rate on the Loan will automatically increase to the default interest rate of 12% as specified in the Note.

Acceptance of partial payments by the Lender shall be without prejudice to the Lender's right to insist on payment in full of the outstanding balance and of any additional due or to become due under the Loan Documents. The Lender reserves all rights.

Please make checks payable to: "Maryland Agricultural and Resource-Based Industry Development Corporation".

Send your check to:

> Maryland Agricultural and Resource-Based Industry
>  Development Corporation
> 1410 Forest Drive, Suite 21
> Annapolis, Maryland 21403
> <u>Attention</u>: Executive Director

All future communication regarding this matter should be directed to the undersigned.

Very truly yours,

W. David Rawle
Assistant Attorney General

## SUBORDINATION AND INTERCREDITOR AGREEMENT

**THIS SUBORDINATION AND INTERCREDITOR AGREEMENT** (this "Agreement"), is made as of the *26th* day of *July*, 2013, by and between **MARYLAND SMALL BUSINESS DEVELOPMENT FINANCING AUTHORITY** (the "Authority"), whose address is 401 East Pratt Street, 17th Floor, Baltimore, Maryland 21202, and **JOANN ANDERSON** (the "Lender"), whose address is *5614 Oak Place, Bethesda Maryland 20817.*

### RECITALS

**A.**   Waterland Fisheries, Inc., a Michigan corporation (the "Borrower"), has applied to the Authority for financial accommodations consisting of a term loan in the original principal amount of Three Hundred Fifty Thousand Dollars ($350,000.00) (the "Authority Loan") to be used by Borrower to finance working capital.

**B.**   The Authority Loan and all of the obligations of the Borrower in connection therewith are guaranteed by Claud Anderson (the "Guarantor") pursuant to that certain Guaranty of Payment dated *July 26*, 2013, and are evidenced and secured by, among other things, a promissory note dated as of *July 26*, 2013, made by the Borrower and payable to the Authority, a Loan and Security Agreement dated as of *July 26*, 2013, and various other agreements, instruments, and documents executed from time to time in connection therewith (collectively, the "Authority Loan Documents").

**C.**   The Borrower is currently indebted to the Lender in the original principal amount of Five Hundred Ten Thousand Dollars ($510,000.00) (the "Loan"). The Loan and all of the obligations of the Borrower in connection therewith are evidenced and secured by a [Demand Promissory Note] dated as of January 16, 2013, and a Security Agreement dated January 16, 2013, by and between the Borrower and the Lender (together, the "Loan Documents").

**E.**   The Loan is secured by a lien on and security interest in ("Lender Security Interests") all of Borrower's existing and future assets (collectively, the "Collateral").

**F.**   As security for the Authority Loan the Borrower has granted or may hereafter grant to the Authority liens and security interests in the Collateral ("Authority Security Interests").

**G.**   The Lender and the Authority desire hereby, among other things, to establish the relative rights and priorities of the Lender and the Authority in and as to the Collateral and the Authority has required, as a condition of providing the Authority Loan, the execution and delivery of this Agreement by the Lender.

**NOW, THEREFORE**, in consideration of these premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

**1.**   **Incorporation of Recitals**. The Recitals set forth in Paragraphs A through G, above, are hereby incorporated into this Agreement by this reference.

Exhibit E

**2.**    <u>**Security Interest in the Collateral**</u>.  The Authority Security Interests in the Collateral and all rights, powers and privileges of the Authority in connection therewith as security for the Authority Debt (as defined below) shall have priority over any Lender Security Interests in the Collateral.  For purposes of this Agreement, the term "Authority Debt" shall mean the Authority Loan extended to the Borrower pursuant to the Authority Loan Documents, as they may be amended, restated or amended and restated from time to time, in an amount up to but not to exceed the aggregate principal amount of Three Hundred Fifty Thousand Dollars ($350,000.00), plus accrued interest thereon (including interest accruing on such debt after the Borrower or the Guarantor becomes subject to a bankruptcy proceeding, whether or not such interest is enforceable against such Borrower or Guarantor or recoverable against the bankruptcy estate), plus Authority Collection Costs (as hereinafter defined).  For purposes of this Agreement, the term "Authority Collection Costs" shall mean liquidation costs, and attorneys' fees and expenses incurred by the Authority in the exercise of its rights and remedies under the Authority Loan Documents.  To the extent that the Authority Security Interests in the Collateral secures any indebtedness other than the Authority Debt, the Lender Security Interests in the Collateral and all rights, powers and privileges of the Lender in connection therewith, as security for the Loan, shall have priority over the Authority Security Interests and all rights, powers and privileges of the Authority in connection therewith.

**3.**    <u>**Notice of Default**</u>.  The Lender and the Authority each agree to provide the other with prompt notice of the occurrence of any defaults by the Borrower or the Guarantor under the respective Lender Loan Documents and Authority Loan Documents; *provided, however*, that any failure to provide such notice shall not create any rights in favor of the Lender or the Authority, respectively, not expressly set forth in this Agreement.

**4.**    <u>**Subordination of Lender's Rights**</u>.  The Lender agrees that, so long as any of the Authority Security Interests in the Collateral is entitled to priority over the Lender Security Interests in the Collateral under the terms of this Agreement, the Lender will not, without the prior written consent of the Authority, take any action to foreclose or enforce any liens on or security interests in, collect, demand, sell, liquidate, dispose of, realize upon, or otherwise exercise any rights and remedies the Lender may otherwise have with respect to the Collateral. So long as any Authority Security Interests in the Collateral is entitled to priority over the Lender Security Interests in the Collateral under the terms of this Agreement, the Authority shall have the right, exclusive of any right of the Lender, to foreclose and enforce such Authority Security Interests in the Collateral, to manage such foreclosure or enforcement and to exercise and enforce all of its rights, powers and privileges with respect thereto according to its discretion, including, without limitation, the exclusive right to collect, sell, dispose of, or liquidate the same. The Lender agrees not to oppose, interfere with or otherwise attempt to prevent the Authority from enforcing the Authority Security Interests in the Collateral.  At the request of the Authority, the Lender shall deliver a release of any lien and security interest it has on the Collateral which is subject to the Authority Security Interests to facilitate a transfer or sale of the Collateral, so long as the security interests of the Lender and the Authority continue in the proceeds of such transfer or sale and the proceeds of such transfer or sale are applied against Authority Debt and any excess proceeds are paid to the person(s) entitled thereto under applicable law.

**5.**    <u>**Further Assurance**</u>.  The Lender agrees, from time to time, upon request of the Authority, to execute and deliver such agreements and instruments as may be reasonably

requested by the Authority in order to further evidence or reflect of record the agreements contained herein.

      6.    **Agreements with Borrower and Guarantor**.  The agreement of subordination set forth herein shall remain in full force and effect, regardless of whether the Authority amends, extends, waives, supplements or otherwise modifies any of its agreements with the Borrower or the Guarantor.  The Authority may exercise or refrain from exercising any right or remedy against the Borrower or the Guarantor without affecting the subordination set forth herein.

      7.    **Transfer**.  The Lender agrees not to assign or transfer to any other person any security interest which it holds in any of the Collateral unless such assignment or transfer is expressly made subject to this Agreement.  This Agreement shall be binding upon the parties hereto and their respective successors and assigns.

      8.    **No Waiver**.  No waiver shall be deemed to be made by the Authority of any of its rights hereunder unless the same shall be in writing, and each waiver, if any, shall be a waiver only with respect to the specific instance involved and no such waiver shall establish a course of conduct.

      9.    **Notices**.  All notices, demands, requests, consents, certificates, or other communications under this Agreement shall be deemed given three (3) business days after being mailed, by registered or certified mail, postage prepaid, return receipt requested, or the following business day when sent by a nationally utilized overnight delivery service to the Lender or the Authority as appropriate at its respective address set forth in the first paragraph of this Agreement.  The Lender or the Authority may by notice in accordance with this section designate any different addresses to which notices, certificates or other communications are to be sent.

      10.    **Amendment**.  Neither this Agreement nor any term, condition, covenant, or agreement hereof may be changed, waived, discharged, or terminated orally, but only by an instrument in writing by the party against whom such change, waiver, discharge, or termination is sought.

      11.    **Execution by Borrower and Guarantor**.  The Borrower and the Guarantor join in the execution of this Agreement for the purpose of consenting and agreeing to all of the terms and provisions hereof, but this Agreement shall not create any rights in the Borrower or Guarantor respecting the matters and transactions which are the subject hereof.  All understandings, agreements, representations and warranties contained herein are solely for the benefit of the Lender and the Authority, and their respective successors and assigns, and there are no other parties (including, but not limited to, the Borrower or Guarantor) who are intended to be benefited in any way by this Agreement. Nothing in this Agreement is intended to affect or limit in any way the lien or security interest that Lender or the Authority has or may acquire in any assets of Borrower or Guarantor, whether tangible or intangible, insofar as the Borrower, Guarantor or any third party is concerned, and the Lender and the Authority reserve all of their respective liens, security interests, rights, remedies and priorities as against the Borrower, Guarantor, and any such third parties.

3

12.     **Governing Law**.     This Agreement shall be governed by and construed in accordance with the laws of the State of Maryland, without regard to its conflicts of laws provisions.

13.     **Pronouns and Headings**.   Whenever used herein, the singular number shall include the plural, the plural the singular, and the use of the masculine, feminine, or neuter gender shall include all genders. The section and subsection headings in this Agreement are for convenience only and shall not limit or otherwise affect any of the terms hereof.

14.     **Counterparts**. This Agreement may be executed in any number of counterparts, each of which shall be an original but all of which together shall constitute one and the same instrument.

Signatures appear on the following page.

4

Waterland_Intercreditor_Agt-J._Anderson-02

## SIGNATURE PAGE TO
## SUBORDINATION AND INTERCREDITOR AGREEMENT

**IN WITNESS WHEREOF**, the Lender and the Authority have caused this Agreement to be executed, sealed, and delivered as of the day and year first written above.

WITNESS:

_____     _____(Seal)
                                     Joann Anderson, individually

WITNESS:                             **MARYLAND SMALL BUSINESS**
                                     **DEVELOPMENT FINANCING AUTHORITY**

_____     By: _____(Seal)
                                     Celester A. Hall, Director
                                     Small Business Financing, DBED

STATE OF MARYLAND
CITY/COUNTY OF Montgomery, TO WIT:

I HEREBY CERTIFY that on this 25 day of July, 2013, before me, the undersigned, a Notary Public of the State of Maryland, personally appeared **Joann Anderson**, known to me or satisfactorily proven to me, to be the person whose name is subscribed to the foregoing Surbordination and Intercreditor Agreement, who acknowledged to me that she executed the same for the purposes and consideration therein expressed.

WITNESS my hand and Notarial Seal.

_____
Notary Public

My Commission Expires: Nov 10th, 2014

AIMEE BENVALA TANKOANO
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires November 10, 2014

Acknowledgment continues on the following page.

5

Waterland_Intercreditor_Agt-J_Anderson-02



STATE OF MARYLAND
CITY/COUNTY OF ___Baltimore___, TO WIT:

I HEREBY CERTIFY that on this 26th day of ___July___, 2013, before me, the undersigned, a Notary Public of the State of Maryland, personally appeared **Celester A. Hall**, known to me or satisfactorily proven to me, to be the person whose name is subscribed to the foregoing Subordination and Intercreditor Agreement, who acknowledged to me that he executed the same in his capacity as the Director, Small Business Finance, DBED, being duly authorized to do so for the purposes and consideration therein expressed.

WITNESS my hand and Notarial Seal.

_Gloria M. Shupck_
Notary Public

My Commission Expires: ___Feb. 5, 2017___

Waterland_Intercreditor_Agt-J._Anderson-02

## ACKNOWLEDGMENT AND AGREEMENT OF OBLIGORS

Each of the undersigned Borrower and Guarantor (collectively, the "Obligors") do hereby accept and acknowledge receipt of a copy of the foregoing Subordination and Intercreditor Agreement (the "Agreement"). The Obligors join in the execution of the Agreement for the purpose of consenting and agreeing to all of the terms and provisions of the Agreement; *fully understanding, however*, the Agreement shall not create any rights in any of the Obligors respecting the matters and transactions which are the subject thereof.

Each of the Obligors hereby irrevocably and unconditionally authorizes the Lender and the Authority, without any further notice to or consent from the Obligors, to exchange and disclose to the other from time to time such information about the businesses, financial affairs, operations, and status of collateral and credit facilities of the Obligors as the Lender and the Authority elect to exchange.

IN WITNESS WHEREOF, the undersigned have caused this Acknowledgment and Agreement to be duly executed as of the day and year first above written.

**OBLIGORS:**

**ATTEST/WITNESS:**                    **WATERLAND FISHERIES, INC.**

_____              By: _____ (SEAL)
                                           Claud Anderson, President

Date: _____, 2013

**ATTEST/WITNESS:**

_____              _____ (SEAL)
                                           Claud Anderson, individually

7



## ASSIGNMENT OF INSURANCE PROCEEDS

**THIS ASSIGNMENT OF INSURANCE PROCEEDS** ("Assignment") is made as of the _____ day of July, 2013, from **WATERLAND FISHERIES, INC.,** a Michigan corporation (the "Borrower") to **MARYLAND SMALL BUSINESS DEVELOPMENT FINANCING AUTHORITY** (the "Lender").

## RECITALS

A.    The Lender has made a term loan to Borrower in the original principal amount of Three Hundred Fifty Thousand Dollars ($350,000.00) (the "Loan") pursuant to a Loan and Security Agreement of even date herewith by and between the parties hereto (the "Loan Agreement"), and the Borrower has executed and delivered to the Lender a Promissory Note (hereafter, the "Promissory Note") in the aforementioned amount to evidence the Borrower's obligations of repayment. The Promissory Note is secured by a Deed of Trust (the "Deed of Trust") from the Borrower, as grantor, to the trustees named therein.

B.    As a condition of making the Loan, the Lender has required the Borrower to assign to the Lender any and all insurance proceeds (the "Insurance Proceeds") that may be payable to the Borrower under insurance policy number S1586046 (the "Insurance Policy") issued by Selective Insurance Company (the "Insurer"), and resulting from the prior loss of or damage to the inventory, building and equipment of Borrower located at 299 Nealson Street, Hurlock, Maryland 21643 (the "Loss"), in order to secure the Obligations of the Borrower. As used in this Assignment, the defined term "Obligations" shall mean the obligations of the Borrower: (a) to pay when and as due all principal, interest, late charges and other fees and expenses owed by the Borrower to the Lender in connection with the Loan, as provided in the Promissory Note and all other documents executed by the Borrower in connection with the Loan including, without limitation, the Loan Agreement and the Deed of Trust (hereafter, the Promissory Note and all such documents, as they may be renewed, amended, restated and/or amended and restated from time to time, shall be collectively referred to as the "Loan Documents"); and (b) to perform and observe all of the terms, provisions, covenants, and conditions set forth and contained in the Loan Documents, including but not limited to all duties of payment, performance and completion.

NOW, THEREFORE, in consideration of these premises, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Borrower agrees as follows:

1.    <u>Assignment</u>. Borrower hereby assigns all of its right, title and interest in and to any and all Insurance Proceeds up to the amount of the outstanding Obligations.

2.    <u>The Claim</u>. Borrower has submitted a claim to the Insurer under the Insurance Policy for the Loss. The Claim Number is 20983348. As of the date hereof, the amount of Insurance Proceeds payable in respect of the Claim, if any, has not been determined.

Waterland Assignment OF Insurance Proceeds-02

Exhibit B

3.      Application of Insurance Proceeds.  Anything to the contrary notwithstanding, upon the Lender's receipt of the Insurance Proceeds, Lender shall have the option of applying such proceeds to the outstanding Obligations or allowing such proceeds to be used by Borrower to repair the damage to the building and/or equipment, and/or to replace the lost inventory.  Any Insurance Proceeds received by Lender over and above the amount of the outstanding Obligations shall be remitted to the Borrower or the person entitled thereto.

4.      Representations and Warranties.  Except as otherwise set forth Section 5 herein below, Borrower hereby represents and warrants to Lender that Borrower is the sole legal and beneficial owner of the Claim.  Borrower has not sold, transferred, or encumbered the Claim or any interest therein.  Borrower has the power and authority to transfer and assign the Insurance Proceeds and, except as set forth in Section 5, herein below, is transferring and assigning the Insurance Proceeds to the Lender free and clear of any and all right, title, or interest of any other person whatsoever.

5.      Interests In the Claim and Insurance Proceeds.  Borrower is currently indebted to (i) The Harbor Bank of Maryland ("HBM"), (ii) Maryland Agricultural and Resource-Based Industry Development Corporation ("MARBIDCO"), (iii) Delmarva Premium Seafood Company ("Delmarva"), and (iv) Joann Anderson ("Anderson").  Such debt is secured by various liens and security interests in the Borrower's real and personal property, now existing or hereafter acquired including, without limitation, the Insurance Proceeds.  Borrower will assist the Lender in obtaining the agreement of MARBIDCO, Delmarva and Anderson to subordinate their respective interests in the Insurance Proceeds to the interest of the Lender therein.

6.      Term and Termination.  This Assignment shall become effective upon the execution hereof by the Borrower and delivery to the Lender.  This Assignment shall remain in effect until the first to occur of the Lender's receipt of the Insurance Proceeds and the full and complete satisfaction of all of the Obligations.

7.      Further Assurances.  The Borrower shall execute any further or additional documents considered necessary, appropriate, or proper by the Lender so as to effectuate the purposes and intent of this Assignment.

8.      Lender May Assign This Assignment.  This Assignment may be assigned by the Lender and shall inure to the benefit of the Lender and the Lender's successors and assigns, and shall be binding upon the Borrower and the Borrower's successors, and assigns.

9.      Amendment.  The terms and conditions of this Assignment may be modified, altered, waived, or amended only by a writing executed by the Lender consenting to the modification, alteration, waiver, or amendment.

10.     Choice of Law.  This Assignment shall be governed by the laws of the State of Maryland.  All parties hereto consent to the jurisdiction and venue of the courts of the State of Maryland in any action brought to enforce, construe or interpret this Assignment.  The Borrower acknowledges and agrees to stipulate in any future proceedings that this Assignment is to be

considered for all purposes to have been executed and delivered within the geographic boundaries of the State of Maryland even if it was, in fact, executed and delivered elsewhere.

IN WITNESS WHEREOF, the Borrower has executed this Assignment as an instrument under seal as of the date first above written.

**WITNESS/ATTEST:**           **WATERLAND FISHERIES, INC.**

By: _____ (Seal)
                   Claud Anderson, President

## ACKNOWLEDGEMENT

STATE OF MARYLAND    )
County                     ) To Wit:
CITY OF BALTIMORE    )

**I HEREBY CERTIFY** that on this day of _Jul y_____, 2013, before me, a Notary Public for the state and city described above, personally appeared **Claud Anderson**, known to me or satisfactorily proven to me, to be the person whose name is subscribed to the foregoing Assignment of Insurance Proceeds, who acknowledged to me that he executed the same in his capacity as the President of **Waterland Fisheries, Inc.**, being duly authorized to do so, for the purposes and consideration therein expressed.

WITNESS my hand and Notarial Seal.

_____
Notary Public

My Commission Expires: _11-28-13___

## ACKNOWLEDGEMENT OF RECEIPT

Copy of Assignment of Insurance Proceeds from Waterland Fisheries, Inc. to Maryland Small Business Development Financing Authority dated July 26, 2013, received and filed at the home office of the Insurer located in _____, this _____ day of _____, 2013.

**SELECTIVE INSURANCE COMPANY**

By: _____(Seal)

Name: _____

Title: _____

# JONES & ASSOCIATES

A PROFESSIONAL CORPORATION

ATTORNEYS AND COUNSELORS AT LAW

HARBORPLACE TOWER, SUITE 2700
111 SOUTH CALVERT STREET
BALTIMORE, MARYLAND 21202

---

(410) 385-5240
Fax (410) 962-5209
www.JonesAssociatesLaw.com
DPeterson@JonesAssociatesLaw.com

J. DARRELL PETERSON

DIRECT DIAL: 410-385-5239

August 1, 2013

Mr. David Noppinger
Selective Insurance Company
P.O. Box 7263
London, Kentucky 40742

      Re:    Assignment of Insurance Proceeds
              Your Insured:  Waterland Fisheries, Inc.
              Policy No.:     S1586046
              Claim No.:     20983348

Dear Mr. Noppinger:

      I represent the Maryland Small Business Development Financing Authority ("MSBDFA"). In connection with a loan from MSBDFA to your insured, Waterland Fisheries, Inc. (the "Borrower"), the Borrower has assigned to MSBDFA any and all proceeds that may be payable to the Borrower in connection with the above-referenced claim.

      In connection with the aforementioned assignment, enclosed for your records is a copy of the Assignment of Insurance Proceeds pursuant to which the insurance proceeds that may arise out of the claim have been assigned by the Borrower to MSBDFA (the "Assignment"). Please have the proper officer of Selective Insurance Company sign the Acknowledgement of Receipt attached to the Assignment and return it to me at the above-captioned address or facsimile number as soon as possible. In the meantime, if you have any questions regarding this matter, do not hesitate to contact me.

                              Very truly yours,

                              J. Darrell Peterson

Enclosure